# John D. Donoghue et als v. Charles P. Smith, Jr., et als

[126 A2d 93]

May Term, 1956.

Present: **Jeffords, C. J., Cleary, Adams and Hulburd, JJ. and Barney, Supr. J.**

Opinion Filed October 2, 1956.

260

*Fayette & Deschenes* for the petitioners.

*Robert T. Stafford*, Attorney General, and *Frederick M. Reed*, Deputy Attorney General, for the petitionees.

**Jeffords, C. J.** This is a petition for a writ of mandamus. An answer was filed and also a stipulation of the material facts in the case as agreed to by the parties. We recite in narrative form such of these facts as we consider to be here material.

The petitioners are the directors of the school district of the town of South Burlington. The seven first named petitionees are members of the State Board of Education and last named petitionee is the Commissioner of Education. This board is legally vested with authority to supervise the distribution of funds expended by the state for educational purposes. No. 104 of the Acts of 1949, as amended by No. 98 of the Acts of 1951, and as further amended by No. 226 of the

Acts of 1953, provides the measure and amount of state aid to town school district.

The petitioners pursuant to requirements of the State Board of Education and the pertinent statutes submitted a school district statistical report to the department of education. Certain information contained therein was not considered by the Board to constitute a proper basis for state aid. In this report the number of high school pupils resident in South Burlington attending school in other districts, and for whom tuition is paid by that town, was stated as follows: "total number of pupils 198; average number of pupils 190.94; total tuition paid $43,068.50" Of this total number of pupils 63 with an average daily attendance of 61.92 were not attending a public school, as the same is defined in No. 104 of the Acts of 1949, of another district, and tuition paid on behalf of these 63 pupils was not paid to such a public school.

On November 23, 1955, the Board of Education requested the opinion of the Attorney General on the question of whether in the calculation of state aid under No. 104 of the Acts of 1949, as subsequently amended, there can lawfully be included in the count of average daily attendance those pupils whose tuition has been paid to a school other than a public school as defined in Subdivision V of Section I of No. 104 of the Acts of 1949. The conclusion of the Attorney General, based on the reasons stated in his opinion, was that for the calculation of state aid under No. 104, as amended, pupils whose tuition has been paid to a school which does not qualify as a public school as defined in the Act should not be included in the count of average daily attendance.

As a result of this opinion the Board reduced the average number of pupils from 190.94 to 129.53 which resulted in a reduction of $1,548.00 in the amount of state aid paid to the South Burlington school district.

The petitioners requested reconsideration and change by the Board of its action in reducing the average number of pupils and the Board did reconsider its action but made no change therin nor will it make any change nor pay any additional aid to the school district unless ordered to do so by this Court.

■ The 63 pupils, above referred to, attended three sectarian schools none of which are public schools as defined in No. 104 of the Acts of 1949, as amended, as they do not receive their principal support from public funds.

Since 1949 tuitions paid by towns to both public and non-public schools for students in attendence thereat have been a part of the basis of state aid paid by the Board to such towns.

The prayer contained in the petition is, in substance and effect, that this Court issue a writ of mandamus requiring the petitionees to pay the petitioners the sum of $1,548.00 which the petitionees have refused to pay and to reimburse the petitioners in the future on the amounts paid by them for tuition of their high school pupils in non-public schools in accordance with the provisions of No. 104 of the Acts of 1949.

The pertinent sections of No. 104 of the Acts of 1949 are as follows: Section 1, subdivision I as amended by No. 98 of the Acts of 1951. *"Definition.* Average daily attendance shall mean the average daily attendance for an entire town, including an incorporated school district within the town, and shall be the sum found by adding together the average daily attendance for each public school operated within the town, increased by the average number of pupils resident in such town whose tuition in the school of another town has been paid by a school district within the town, decreased by the the average number of nonresident pupils attending the schools in the town. Such calculation shall be made upon the basis of the attendance during the immediately preceding full school year. The average daily attendance for a school operated within a town shall be calculated by dividing (1) the aggregate number of days of attendance by all pupils in such public school during the school year by, (2) the number of days on which such school was open during such school year."

Subdivision V. "Public school shall mean any school which provides elementary or secondary school training as defined by sections 4363 and 4364 of the Vermont Statutes, Revision of 1947, and which receives its principal support from public funds." Subdivision VI. "State aid shall mean funds granted by the state to a town pursuant to this Act."

Section 2 as amended by No. 226 of the Acts of 1953, as far as here material. "*Amounts*. Each town shall receive, unless otherwise disqualified by any provision of this act, a sum equal to: $85.00 multiplied by the number of its public schools pupils, falling within the first one hundred pupils in average daily attendance;" * * *

Section 6. "*Repeal*. Sections 4416 and 4417 of the Vermont Statutes, Revision of 1947, are hereby repealed." (These sections relate to the matter of state aid.)

As stated by the petitioners in their main brief there is no question that from 1880, when the Legislature first provided reimbursement to school districts for tuitions paid, to 1949, the law and the administration of the law took into account tuitions paid by school districts for pupils attending public and non-public schools.

They also correctly state the question here presented as follows: "Did the legislature intend by the passage of No. 104 to change the long established practice of reimbursing towns in some measure for tuitions paid by such towns for their pupils attending non-public schools in some other town?"

██ "In the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the Legislature. *State* v. *Legacy*, 116 Vt 320, 322, 75 A2d 668; *State* v. *Estate of Taranovich*, 116 Vt 1, 5, 68 A2d 796; *Troy Conference Academy* v. *Town of Poultney*, 115 Vt 480, 489, 66 A2d 2. The legislative intent must be ascertained from the act itself, if the language is plain. *Doubleday* v. *Town of Stockbridge*, 109 Vt 167, 172, 194 A 462. The ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the statutory provisions. *Snyder* v. *Central Vt. Ry.*, 112 Vt 190, 193, 22 A2d 181. Where the meaning of a statute is plain, courts have the duty to enforce it according to its obvious terms, and there is no necessity for construction. *Blanchard* v. *Blanchard's Estate*, 109 Vt 454, 459, 199 A 233; *State* v. *Stevens*, 116 Vt 394, 397, 77 A2d 884." *Lewis* v. *Holden*, 118 Vt 59, 62, 63, 99 A2d 758, 760.

██ It must be presumed that the Legislature in enacting

No. 104 of the Acts of 1949 acted with full knowledge of prior legislation on the same subject. *In re Swanton Market Area*, 112 Vt 285, 292, 23 A2d 536.

■ "The intention and meaning of the Legislature are to be ascertained from an examination of the whole and every part of the act, the subject matter, the effects and consequences, and the reason and spirit of the law." *First National Bank of Boston* v. *Harvey*, 111 Vt 281, 292, 293, 16 A2d 184, 188.

With these rules as a guide we now proceed to answer the question here presented.

Both parties attach much significance to the words "whose tuition in the school of another town has been paid by a school district within the town." These words appear in section 1 of the 1949 act as amended. This section sets forth the manner by which is ascertained one of the factors, i.e., the average daily attendance, used in determining the amount of state aid to which a town school district is entitled.

The petitioners assert that the words "of another town" mean those schools "that exist in" a town. Or, in other words, the Legislature, by the use of these words, did not intend to restrict state aid for tuition paid for instruction in public schools as such schools are defined in the Act.

The petitionees claim that the words "of another town" mean those "owned by a town." They also place much importance on the fact that in this section the word "public" is twice used in reference to schools in support of their claim that the words "school of another town" mean a public school of a town as defined in the Act.

■ There is no need to speculate as to which of these claims is correct for the reasons given in their support. We are concerned here only with the matter of state aid. When we consider section 2 of the Act, as amended, in connection with section 1 as amended, as we should, it is clear that the Legislature intended by the use of the words "in a school of another town" to mean a public school of such town as defined in the Act. The basis for state aid under section 2 is the number of the "public school pupils" of a town, i.e., pupils attending a public school as defined in the Act. It follows that to obtain

state aid for pupils attending a school of another town such school must be a public school as defined in the Act, i.e., a school that receives more than 50% of its support from public funds.

■ Our answer to the question as stated heretofore by the petitioners is that the Legislature did intend in enacting No. 104 of the Acts of 1949 to change the law and practice of giving state aid to towns as reimbursement in some measure for tuition paid by such towns for their pupils attending non-public schools in another town.

The petitioners devote a large part of their briefs to the history of legislation previous to the passage of No. 104 of the Acts of 1949 in support of their contention that by this Act state aid is not confined to reimbursement in part for tuitions paid for pupils attending public schools as defined in the Act.

■ Where a statute is equivocally worded, so that the meaning is obscure, resort may be had to extrinsic matters, such as the history of the enactment and the trend of previous legislation. *Troy Conference Academy* v. *Town of Poultney*, 115 Vt 480, 490, 66 A2d 2, and cases cited. Here the meaning of the Act is plain; thus it must be enforced according to its obvious terms, and there is no necessity for construction. *Lewis* v. *Holden, supra*, 118 Vt 59, 63, 99 A2d 758. If this were not so there never could be a repeal of previous legislation.

All that the petitioners say in respect to the words "public school pupils" appearing in section 2 of the Act is as follows: "Admittedly, the use of the italicized words (public school pupils) would seem to be restrictive until the language is related to definition of Average Daily Attendance. This definition includes pupils for whom tuition is paid for attendance at schools of another town. Such pupils are merged with public school pupils and this was pointed out in relation to previous legislation affecting the same subject matter, R. L. (1880) Sec. 570 'In calculating the share of the public moneys which a district is entitled to receive, the attendance of any scholar upon an academy, as provided in the preceding sections, *shall be*

*treated as an attendance for an equal length of time upon a public school maintained by the district,'*" (Italics supplied by the petitioners)

Again the petitioners resort to previous legislation in support of their claim as to the construction of the Act which, as we have seen, is not necessary in the present case. Moreover, the basis for state aid was changed several times in the statutes relating thereto between 1880 and 1949.

The petitioners also assert that it is always presumed in regard to a statute that no unjust or unreasonable result was intended by the Legislature, as stated in *Gould* v. *Towslee,* 117 Vt 452, 459, 94 A2d 416, and to hold as we have would violate this rule of statutory construction. They say that inconsistencies would be created because no change in the obligation of towns to pay tuitions has been made. However, the fact that state aid is given as reimbursement for tuitions paid only for pupils attending public schools is not inconsistent with the duty of a town not maintaining a high school to pay tuition for its pupils in the high school or academy of another town as provided in V. S. 47, §4339 as amended by No. 20 of the Acts of 1953 and No. 239 of the Acts of 1955.

The petitioners claim that the unjust or unreasonable result which would follow would be the requirement of these statutes that towns pay tuitions at a high school or academy selected by the parents or guardian of the pupil which might not be a public school as defined in No. 104 of the Acts of 1949 and consequently state aid would be lost in such cases.

It does appear that hardships might result from the requirement of §4339 as amended. However, as we have seen, in the interpretation of statutes the fundamental rule is to ascertain and give effect to the intention of the Legislature. Applying this rule, as well as others relating to statutory construction, we have held that to obtain state aid the pupils of a town must attend a public school as defined in No. 104 of the Acts of 1949, as amended. We have said that the intention of the Legislature in this respect is clear.

Where a statute is clear and free from ambiguities, the letter of it is not to be disregarded in favor of a mere pre-

sumption. *State* v. *Franklin County Sav. Bank*, 74 Vt 246, 263, 52 A 1069, 1072. Presumptions in aid of construction of statutes are applicable only when there is some doubt as to the intention of the Legislature, 82 CJS 548.

"It is a principle of construction that if the meaning of a statute is doubtful, the consequences are to be considered in its construction; but, where the meaning is plain no consequences are to be regarded in the construction for that would be assuming legislative authority." *State* v. *Franklin County Sav. Bank, supra.* See also *Lewis* v. *Holden, supra,* at page 65. Courts are bound to declare the law to be that which the legislature, acting within its constitutional power, enacts, even though such legislation appears to the courts to be unfair or unjust. If the meaning of a statute is plain and its provisions are susceptible of but one interpretation, the courts, in construing the statute, may not take into consideration the injustice which may be caused thereby. If the provisions of a statute are unfair or unjust, the remedy is by a change of the law itself, to be effected by the legislature, and not by judicial action in the guise of interpretation: 50 Am Jur, Statutes, §371.

Finally the petitioners say, in substance, that if we hold as we have certain stated inequities and injustices would result. If such be the case, it is not within the province nor the power of this Court to correct them. *Lewis* v. *Holden, supra; State* v. *Franklin County Sav. Bank, supra;* 50 Am Jur, *supra.*

The petitionees assert that both the constitutions of Vermont and of the United States prohibit the payment of public funds to sectarian schools. This issue was raised in their answer. They admit that it is only necessary to decide this question if we hold in favor of the petitioners on the construction of No. 104 of the Acts of 1949 as amended. However, the State Board of Education through its counsel has requested us, in view of the fundamental importance of the constitutional issues in the case, to decide this question.

We respectfully decline to grant this request for the following reasons:

■ 1. It is a well established rule that courts will not pass upon constitutional questions unless it is necessary to the final determination of the case. *Hanley* v. *United Steel Workers,* 119 Vt 187, 193, 122 A2d 872,

■ 2. We are requested to give what would be an advisory opinion. Heretofore we have declined to comply with a request to give such an opinion to executive or legislative departments of the government. *In re House Bill 88,* 115 Vt 524, 64 A2d 169.

■ 3. The decision of this question would be based entirely on dicta. If it depended entirely on the pertinent provision in the constitution of the United States as amended it is certain that because it had such a basis no review of it would be granted by the Supreme Court. Consequently the petitioners would be left in a manifestly unfair situation if our decision was adverse to them.

*Petition dismissed, with costs.*