## State of Vermont v. William B. Baldwin

[438 A.2d 1135]

No. 310-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed December 10, 1981

502

*Mark J. Keller,* Chittenden County State's Attorney, and *James R. Crucitti* and *Jeffrey Cohen,* Deputy State's Attorneys, Burlington, for Plaintiff.

*James M. Farrell* and *Joel W. Page* of *J. M. Farrell Associates,* Burlington, for Defendant.

**Peck, J.** Defendant William Baldwin was convicted after jury trial of operating a motor vehicle on the public highway in the Town of Colchester while under the influence of intoxicating liquor contrary to the provisions of 23 V.S.A. § 1201(a)(2). He appealed his conviction to this Court; we affirm.

A review of the record on appeal shows that on the evening of December 13, 1979, commencing at approximately ten o'clock, an officer of the Colchester Police Department, acting on information from a Burlington officer, followed a 1973 Mercury Montego along Heineberg Drive in Colchester, over the Heineberg Bridge and into the City of Burlington on Plattsburgh Avenue, a total distance of about a quarter of a mile. The manner in which the Mercury ahead of him was being operated aroused the officer's suspicion. He testified that it crossed the highway center line "numerous times," there was a near collision with the bridge structure, and frequent changes in the rate of speed occurred; in the words of his testimony, "[T]he manner of operation was, as far as the travel speed, was accelerate and then slow down, accelerate and then slow down . . . ."

Based on his observations the officer finally halted the vehicle at 10:08 P.M. as it turned into North Avenue from Plattsburgh Avenue, also in Burlington, where he discovered the driver and sole occupant of the car to be the defendant. The officer testified that defendant's speech was slurred, there was a strong odor of intoxicants on his breath, and his eyes were bloodshot and watery. When defendant got out of his car the officer observed that he swayed noticeably. When asked for his driver's license, he had difficulty locating it in his wallet, and his performance of the routine dexterity tests was slow and inaccurate. At trial the officer was asked if, based on those observations, he had formed an opinion as to the condition of defendant. He responded, "Yes, I felt he was moderately impaired."

The officer requested defendant to submit to a breath test and he agreed. However, when asked to accompany the officer to the Colchester Police Department for that purpose, he objected, indicating he "did not want to go" to Colchester, but

eventually complied with the request, even though two Burlington police officers had by that time arrived at the scene. Notwithstanding vigorous protestations of compulsion in his brief, we can determine only that in the first instance he "did not want to go" to Colchester but thereafter he did so, and the breath test was administered there at 11:05 P.M. after he had consulted by phone with his attorney. The results of the test indicated 0.24 per cent blood alcohol content at the time it was administered. Finally the officer testified that he had defendant under continual observation from the time the vehicle was stopped until the breath test was administered, and during that period defendant did not drink any alcoholic beverage.

In March of 1980, defendant filed pretrial motions which were denied by a judge who did not thereafter preside at the trial. These motions were three in number, a motion to dismiss for lack of a prima facie case, and two motions to suppress evidence, particularly the results of the breath test and the opinion based thereon. Both the two latter motions were essentially on the same grounds: the postulate that the Colchester Police Department, in the person of its officers, had no authority or jurisdiction to arrest defendant in, or remove him from, the territorial jurisdiction of the City of Burlington Police Department.

These motions were renewed at the time of trial, and during the course of the trial, generally in the form of objections as the State sought to adduce specific matters of evidence. In response the trial judge denied or overruled the protests, advising defendant in some instances that the issues raised had already been disposed of at the pretrial level and he was bound by these rulings, or that he was not going to reverse the earlier rulings of the judge who made them.

Defendant objected also to testimony by the State's expert witness that in his judgment, given a blood alcohol content of 0.24 as shown by the breath test, the defendant would have been impaired at the time of operation. The objections went both to the expert's qualifications and to the speculative or conjectural nature of the opinion. The objections were overruled.

I.

On appeal defendant claims error in the court's denial of his motions to suppress evidence. He urges strenuously that the

pretrial court's conclusions, adopted inferentially by the trial judge, that the officer had the right, under the doctrine of fresh pursuit as defined by 23 V.S.A. § 4(12), to stop defendant outside of his own territorial jurisdiction and subsequently to arrest him there and return him to Colchester, was error. Assuming this to be so, he argues that the breath test was illegally obtained evidence and should have been suppressed, together with the expert testimony based thereon, as a violation of the unauthorized search and seizure clause of the Fourth Amendment to the Federal Constitution. *State* v. *Barr*, 126 Vt. 112, 118, 223 A.2d 462, 467 (1966).

Defendant contends that the common law doctrine of fresh pursuit, which he claims further still controls in this state, applies only to felonies. Accordingly, he argues, the offense being a misdemeanor, a police officer of the Town of Colchester had no authority to take any action in the City of Burlington, or transport him back into Colchester.

We do not find that this Court has ever considered the extraterritorial powers of an enforcement officer under the common law of fresh pursuit, although an early case, *Bromley* v. *Hutchins*, 8 Vt. 194 (1836), skirts the question in discussing the powers of a sheriff from another state to pursue into Vermont and recapture here a prisoner who had escaped from his custody on civil process. But its application to felonies only is not everywhere recognized:

> There is another common law doctrine of fresh pursuit whereby a peace officer may arrest, without a warrant, for misdemeanors committed in his presence within a reasonable time thereafter. The fresh pursuit affects only the reasonableness of the lapse of time between the commission of the offense and the arrest therefor.

*Gattus* v. *State*, 204 Md. 589, 600-01, 105 A.2d 661, 666 (1954).

It appears that the common law, like its statutory in-laws, is always subject to judicial interpretation. It is, however, unnecessary to define here the limits of common law fresh pursuit in Vermont. Defendant asserts the doctrine has not been modified by statute in this state notwithstanding the definitional provision of 23 V.S.A. § 4(12), which reads:

> "Fresh pursuit" as used in this chapter includes fresh pursuit as defined by the common law, and also the pur-

suit of a suspected violator of the criminal laws or other laws of this state, for which he is, or might be, subject to arrest, by an enforcement officer. Fresh pursuit as used in this chapter is not necessarily instant pursuit, but pursuit without unreasonable delay.

We disagree with defendant as to the effect of this statutory subdivision, and hold that by virtue of its provisions, if not otherwise under common law, the doctrine of fresh pursuit includes the circumstances of this case.

In urging his position, defendant points to the phrase in § 4(12), which reads, "as used in this chapter," to support the proposition that this definition of fresh pursuit has no application outside of the statutory chapter in which it appears; 23 V.S.A. Chapter 1. This argument might be persuasive or even dispositive were it not for the dilemma it creates. Similar language in other enactments generally does limit the scope of a statutory definition, speaking the legislative intent clearly. In this particular case, however, if the definition of fresh pursuit is limited to Chapter 1, it has no application at all, and thus becomes meaningless. Nowhere else in the chapter does the defined phrase appear, nor do we find any other provision in the chapter to which the definition might apply.

Undoubtedly there is not here a masterpiece of legislative clarity. The intent of the legislature is mysterious at best. Whenever such a situation arises we must seek for a solution through the process of statutory construction, having always in mind that the very purpose and objective of the process and of our function is to determine, as best may be, and give effect to the apparent intent of the legislature. *Loeb* v. *Loeb,* 118 Vt. 472, 483, 114 A.2d 518, 526 (1955).

Defendant recognizes the problem but takes the position that 23 V.S.A. § 4(12) is presently in a sort of limbo and clearly "contemplates further legislative enactment utilizing the term defined if it is to have operative effect." This is another way of saying he urges us to apply the familiar plain meaning rule which provides that when the meaning of a statute is plain on its face it must be enforced in accordance with its express terms. *Christie* v. *Dalmig, Inc.,* 136 Vt. 597, 599, 396 A.2d 1385, 1387 (1979). This rule is bolstered by the

presumption that the ordinary meaning of statutory language was intended by the legislature. *Donoghue* v. *Smith*, 119 Vt. 259, 263, 126 A.2d 93, 96 (1956). Defendant also invokes the rule that a statute will not be construed to effectuate a change in the common law unless the legislative intent to do so is clearly and plainly expressed or results by necessary implication. *Record* v. *State Highway Board*, 121 Vt. 230, 236–37, 154 A.2d 475, 480 (1959). Assuming however that common law fresh pursuit is in accord with defendant's statement of it, the question is not so much whether § 4(12) modifies or expands the doctrine, for the statute clearly does that; the mystery which necessitates construction lies in the *application* of the expanded doctrine.

At the outset we note, *en passant,* that there is nothing improper per se about the enactment of a statute, the operative effect of which is made contingent upon the happening or result of some future event. *Thompson* v. *Smith,* 119 Vt. 488, 501, 129 A.2d 638, 647 (1957). Nevertheless, in all of the instances of which we are aware, the contingency itself has been clearly stated in the enactment; usually the adoption of its provisions by an affected interest such as a municipality or one or more of our sister states. We find no instance in which the contingency has been left to speculation. The mere possibility appears to us so remote and unlikely that we reject defendant's conjectural explanation that the legislature intended the application of § 4(12) to be contingent upon future clarifying legislation.

The rules relating to plain and ordinary meanings are, of course, legal truisms invoked in the first instance as aids in determining whether construction is necessary at all. *State* v. *Lynch,* 137 Vt. 607, 611, 409 A.2d 1001, 1004 (1979). But these rules are only starting points on the path to the objective of legislative intent, albeit the journey may end there as well if no difficulty arises to cast uncertainty on the intent. We must have in mind always that rules of statutory construction are no more than aids, meaningless in themselves, developed through long years of experience for the sole purpose of assisting the interpreter in achieving his goal.

Rules of construction are not laws, hard and inflexible, which *must* be applied in a given situation simply because it is possible to do so. Indeed one of these very rules provides that a statute is to be construed as to carry out the legislative intent, though such construction may seem contrary to, and conflict with, the letter of the statute or its literal sense. *Harden* v. *Vermont Department of Taxes*, 134 Vt. 122, 124, 352 A.2d 685, 686-87 (1976). This Court has held further that in construing an enactment we are not confined to a literal interpretation of the statutory language. *In re Hatch*, 130 Vt. 248, 251, 290 A.2d 180, 182 (1972). One practical effect of these and similar decisions is to point up the fact that the plain and ordinary meaning rules are no more than that; they can be disregarded in an appropriate case like any of the other rules of construction.

In a 1976 case we stated, "it is essential that the construction [of legislation] not be such that will render the act ineffective." *Audette* v. *Greer*, 134 Vt. 300, 302, 360 A.2d 66, 68 (1976). There is, moreover, a recognized presumption that the enactment of meaningless legislation is not intended. 82 C.J.S. *Statutes* § 316, at 546-47. If we adopt the construction urged by defendant, § 4(12) is not only ineffective, it is meaningless, since there is nothing to which it can apply to give it meaning.

It is evident that this statutory subdivision is, in part, inartfully constructed in its use of the controversial phrase "as used in this chapter." Nevertheless, consistent with the Court's responsibility to provide a construction which will not leave the enactment ineffective or meaningless, if it is possible to do so, we think the disputed language means, essentially, "as used in this chapter [for purposes of implementing its provisions]," including the provisions of the subdivision itself. This is not an unduly strained construction; it places subdivision (12) in harmony, as an operative definition, with the other definitions in 23 V.S.A. § 4, and even more significantly with its opening paragraph which we construe to indicate clearly that the legislature intended *all* of the definitions in the section to apply to *all* the statutes relating to motor vehicles and to the enforcement of the laws regulating motor vehicles in Title 23 and in Title 20, Part 5 (Public Safety) un-

less the context of these statutes themselves compel otherwise. Earlier decisions from this Court have in fact relied on several of these definitions in cases involving, *inter alia*, motor vehicles, operation, public highways, and jitneys, all as defined in this section. See cases cited in the annotations to 23 V.S.A. § 4.

The State suggests that 23 V.S.A. § 4(12) derives from a New Jersey statute, N.J. Stat. Ann. § 2A:156.2, which it parallels in many respects, and in which the wording, "as used in this chapter," also appears, but in that case is appropriate. The State argues that in adopting the New Jersey statute for Vermont purposes this language was brought forward inadvertently and should, therefore, be disregarded. *State* v. *Stevens*, 137 Vt. 473, 481–82, 408 A.2d 622, 627 (1979). This is a logical argument and may indeed be the true explanation. Nevertheless, having in mind the presumption that all language is inserted in a statute advisedly, *State* v. *Racine*, 133 Vt. 111, 114, 329 A.2d 651, 654 (1974), and the Court's obligation to give effect to every word, clause and sentence of a statute if it is possible to do so, *State* v. *Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980), we are reluctant to discard statutory language as inadvertent or as mere surplusage when it is not necessary in order to effectuate what we conceive to be the intent of the legislature in enacting 23 V.S.A. § 4. Accordingly we decline to adopt the State's suggestion, preferring instead the interpretation in the preceding paragraph as more consistent with the better rule of giving meaning and effect to all the language. *Id.*

In the light of our interpretation of 23 V.S.A. § 4(12) we hold that the Colchester police officer acted with full authority in following defendant into the City of Burlington and stopping his vehicle in that jurisdiction.

Defendant resorts frequently to the word "arrest" to describe his conveyance by the officer from Burlington to Colchester for purposes of taking the breath test. If there was an arrest in fact, it is not disclosed by the record before us. It is not necessary to place a person under arrest before the test may be administered if he consents thereto, *State* v. *Brown*, 125 Vt. 58, 60, 209 A.2d 324, 326 (1965); *State* v.

*Auger,* 124 Vt. 50, 55, 196 A.2d 562, 565–66 (1963), and therefore accompanying an officer voluntarily to the police station for this purpose, without more, does not constitute an arrest. This holding, and the rules laid down in *Brown* and *Auger,* are not affected when, as here, the conveyance of a consenting suspect is from one in-state territorial jurisdiction to another. Moreover, a person cannot be compelled to take a blood alcohol test against his will although certain statutory consequences follow upon a refusal. 23 V.S.A. § 1205(a).

The record indicates that defendant agreed to a breath test while still in Burlington and, in the Colchester Police Department, after consulting by phone with his attorney he did in fact consent to, and did take, the test. Afterwards he was driven to his residence by the Colchester police. At no time did it become necessary to impose any physical restraints on defendant, or to lay hands on him, nor is there any objective manifestation sufficient to establish, as a matter of law, an intent on the part of the officer to effect an arrest. *State* v. *Kelly,* 376 A.2d 840, 847 (Me. 1977). The only contrary evidence of any significance lies in defendant's indication that he didn't want to go to the Colchester Police Department for the test. But his mere displeasure at the request is not alone sufficient to establish that he did not go of his own free will, or that his going, again, without more, constituted an arrest, even though the officer had probable cause to do so based on his clinical observations, and clearly had reasonable grounds for requesting defendant to submit to the breath test.

On the record before us, we conclude that no arrest took place. Defendant's return to Colchester, while it may not have accommodated his preference, was consensual on his part. Moreover, in view of our holding above relative to the officer's powers under the statutory definition of fresh pursuit and the return to Colchester being voluntary, the taking of a breath test and the admission into evidence of its results did not constitute a violation of defendant's Fourth Amendment rights as fruit of the poisonous tree.

There was no error in the refusal of the court below to suppress evidence on the grounds that the fresh pursuit was improper.

## II.

Defendant contends next that the trial court's summary denial "without consideration" of his motions to suppress and for dismissal was prejudicial error.

The assertion that the motions were denied without consideration appears to be based primarily on the trial judge's statement made several times, although not invariably, that he was bound by the pretrial rulings (made by another judge) on the same motions.

We agree with defendant's position that pretrial rulings are not necessarily binding throughout the trial; they are tentative only, and subject to revision at trial. *State* v. *Blondin*, 128 Vt. 613, 616–18, 270 A.2d 165, 166–67 (1970). If the rule were otherwise a trial judge would be tied to obvious errors even when, as here, the earlier rulings were made by a different judge. The trial judge would moreover be rendered helpless in the face of additional evidence or other considerations developing during trial of the case which might otherwise dictate a modification or a reversal of the preliminary rulings. While caution should be the guiding principle in acting on pretrial motions renewed at, during, or after trial, they are not immutable regardless of the circumstances which may arise later in time.

Even if the trial court's posture in response to defendant's renewed motions rises to the level of error in principle, it does not follow "as the night the day" that it warrants reversal. The pretrial rulings were correct in light of our resolution of the fresh pursuit issue; the subsequent denial did no more than affirm rulings that were proper *ab initio*. The burden to show prejudice is on the party claiming it. *Cadel* v. *Sherburne Corp.*, 139 Vt. 134, 136, 425 A.2d 546, 547 (1980). If there was error, defendant has not convinced us that he has been prejudiced; reversal is not warranted. V.R.Cr.P. 52(a).

## III.

Prejudicial error is claimed by defendant in alleging that the jury was instructed they could consider the opinion of the officer as to whether defendant was operating a motor

vehicle on a public highway while under the influence of intoxicating liquor, when the officer was not asked for, and did not state, such an opinion. There are several problems with this challenge. First, the instruction to the jury was not in the terms implied by the issue as stated. On the contrary, the judge simply instructed the jury in accordance with the well established law that a layman may, on the basis of clinical observations, give an opinion as to the state of a person's sobriety. *State* v. *Coburn*, 122 Vt. 102, 107, 165 A.2d 349, 353–54 (1960). But one of the clinical observations by the officer, on which his opinion was based, was the erratic manner in which defendant's vehicle had been operated. Nevertheless, considering the brief time which lapsed between the moment the vehicle was stopped and the observations of defendant's person were made, it was a reasonable inference, which the jury might draw from the officer's observations and his opinion that defendant was moderately impaired (at that time), that he was also impaired while operating his vehicle only minutes before. Further the trial judge instructed the jury carefully that:

> [O]pinion evidence has no greater value than the reasons which support it. It does not establish a fact as a matter of law and is not of controlling effect. It is for you to decide if the witness's observations—that is the police officer—found a sufficient basis for the opinion of the witness. And in doing this, you must consider all the symptoms, since no one of them standing alone will support a conclusion that the Defendant was under the influence.

Likewise, the jury was properly instructed on the elements of the offense, including the requirement they must find that the operation occurred while defendant was under the influence of intoxicating liquor. We find no error in the court's charge to the jury.

## IV.

All but one of the remaining questions raised by defendant address the qualifications of the prosecution's expert to give an opinion as to the state of defendant's sobriety at the time he was operating his vehicle, based on the breath

test taken approximately an hour after he had been halted. These are questions addressed to the sound discretion of the trial judge, and we will not reverse on appeal unless the evidence shows it to be erroneous or founded upon an error of law. *South Burlington School District* v. *Calcagni*, 138 Vt. 33, 50, 410 A.2d 1359, 1367 (1980). We have reviewed the record with careful attention to these issues, including the qualifications of the expert which were challenged vigorously and ably at trial. As a result we are content that the expert was adequately qualified and his opinion admitted without error, and the jury properly instructed thereafter that they must be satisfied the expert testimony referred to the time of operation.

## V.

The final salvo from defendant's battery is directed at the lower court's denial of his motions for acquittal and for a new trial. Reviewing the evidence in the light most favorable to the State and excluding modifying evidence, *State* v. *Eaton*, 134 Vt. 205, 206, 356 A.2d 504, 505 (1976), we hold that the State has introduced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt. There is no error in the denial of defendant's motion for judgment of acquittal. *Id*. We find also no prejudicial abuse of discretion warranting a new trial, and hold the court's ruling on defendant's V.R.Cr.P. 33 motion to be without error.

At the close of the State's case, defendant also rested. He did not take the stand and presented no evidence to overcome what we are satisfied was a prima facie case of operating under the influence of intoxicating liquor. He had no obligation to go forward with rebuttal evidence, and the presumption of his innocence remained with him until the jury reached its verdict. Nevertheless, since he elected to remain silent and to present no evidence in his own behalf, he faced the practical reality of the risk of nonpersuasion. *State* v. *Coburn*, *supra*, 122 Vt. at 109, 165 A.2d at 355. Whatever the actual effect of that risk in this case, the jury found him guilty of the offense with which he was charged; they had ample and proper grounds for their verdict.

*Judgment affirmed.*