## In re C.S., Juvenile

[609 A.2d 641]

No. 91-464

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 17, 1992

*Jeffrey L. Amestoy*, Attorney General, Montpelier, *Michael O. Duane* and *Alexandra N. Thayer*, Assistant Attorneys General, Waterbury, and *James Mongeon*, Rutland County State's Attorney, and *Marc D. Brierre*, Deputy State's Attorney, Rutland, for Appellants.

*E.M. Allen*, Defender General, and *William Nelson*, Appellate Attorney, Montpelier, for Appellee.

**Morse, J.** The State appeals an order of the Rutland Family Court that required the Commissioner of Social and Rehabilitation Services (SRS) to retain custody of C.S. to the age of twenty-one. We affirm.

At seventeen years of age, C.S. was adjudicated delinquent, committed to SRS custody and placed at the Woodside Juvenile Rehabilitation Center. His case plan provided that he would remain there until his eighteenth birthday and then be discharged from custody. Prior to turning eighteen, C.S. petitioned the family court to continue jurisdiction over him and order his custody with SRS to continue until his twenty-first birthday. The family court granted the request. The State bases its appeal on the claim that the family court was without authority to order SRS custody to continue past the minority of the child.

Section 5504(b) of Title 33 allows the family court to retain jurisdiction over a delinquent child up to the child's twenty-first birthday in accordance with the procedure set out in § 5504(c) (hearing on continued jurisdiction during three months preceding child's eighteenth birthday). The State, however, relies on 33 V.S.A. § 5531(a), which provides that an order transferring legal custody of a child to an individual, agency or institution shall not remain in force "beyond the minority of the child." C.S. agrees that the plain meaning of this statute deprives the court of authority to order the relief granted in this case because minority ends at age eighteen. He argues, however, that the "minority" language was a mistake and that the Legislature intended instead that twenty-one be the operative age in § 5531(a).

Our analysis begins with the Federal Adoption Assistance and Child Welfare Act, passed in 1980, which requires states to

implement periodic case reviews for children in custody in order to maintain eligibility for federal funding. 42 U.S.C. §§ 671(a)(16), 675(5). Before Congress passed this law, Vermont's juvenile statutes mandated review of dispositional orders transferring custody or guardianship every two years. At that time, § 658(a) of Title 33, (now § 5531(a)), provided:

> Unless otherwise specified therein an order under the authority of this chapter transferring legal custody, or guardianship over the person or residual parental rights and responsibilities of a child to an individual, agency, or institution shall be for an indeterminate period, and provided further that, every order transferring legal custody or guardianship over the person shall be reviewed *two years from the date entered and each two years thereafter.* In no event shall any such order remain in force or effect beyond the minority of the child.

(Emphasis added.)

In 1981, the Legislature began a process to amend § 658(a) to maintain eligibility for federal funding. A bill was prepared to reflect a shorter period of review, as an initial measure, so that the underlined language would read "one and one-half years." Hearings on H. 321 Before the House Judiciary Committee (February 24, 1981). Designated H. 321, the bill was referred to the House Judiciary Committee, where various hearings on its purpose and effect took place. H. 321 was then referred to the House Committee on Appropriations, House Jour. 218 (March 4, 1981), and on May 5, 1981 the Legislature adjourned without taking further action on it.

Ten days later, on May 15, 1981, two juveniles, aged 16 and 15, attacked two girls in Essex Junction, murdering one of them. See *State v. Hamlin*, 146 Vt. 97, 99–100, 499 A.2d 45, 47–48 (1985). Public outcry prompted Governor Snelling to call a special session of the Legislature which convened on July 15, 1981. House Jour. 1079–80 (July 15, 1981, Spec. Sess.). The goal of this special session was to amend the juvenile statutes to allow certain juveniles to be tried as adults and to allow juvenile courts to retain jurisdiction over individuals until the age of twenty-one.

Various statutes were amended to accord with the retention of jurisdiction by the juvenile court. See, e.g., 33 V.S.A.

§ 5502(a)(1)(D) (definition of "child" amended to provide that "an individual may be considered a child for the period of time the juvenile court retains jurisdiction under section 5504"); 33 V.S.A. § 5504(b) (authorizing retention of jurisdiction over delinquent child to age twenty-one). Most significantly for the purpose of deciding this case, § 658(a) (now § 5531(a)), which had been the subject of the earlier amendment process relating to the review of child custody orders, was amended to provide that such orders were to remain in effect until the child reached age twenty-one. 33 V.S.A. § 658(a) (1981) ("in no event shall any such order remain in force or effect *beyond a person's twenty-first birthday.*") (Emphasis added.) Extensive legislative history, as well as a special message from the Governor, demonstrate that the intent of the amendments was to allow greater options in the monitoring of juvenile offenders past the age of eighteen. The special session adjourned on July 16.

After the adjourned session, the 1981 Legislature convened again on January 5, 1982, and the House once more took up H. 321, this time focusing on the unfinished business of the biennial review period provision in § 658. During none of the hearings was there mention of the special session and the changes it induced, and the bill did not reflect the summer-session amendment extending jurisdiction until a child reached age twenty-one. The bill contained the pre-amendment language reading, "In no event shall any such order remain in force or effect beyond the minority of the child." The author of the bill, in other words, wrote it as if the summer-session amendment never occurred. Notably, the language, carried over from the 1973 version, was not italicized, thus signifying an intention to undo the amendment and reinstate the original "minority" provision. This bill was described by SRS as "basically a housekeeping bill" with the goal of bringing Vermont into line with the new federal legislation on periodic reviews. Hearings on H. 321 before the Senate Judiciary Committee (April 7, 1982 Adj. Sess.). It was routinely passed as No. 243, § 1 (1981 Adj. Sess.). See *Vermont Dep't of Social & Rehabilitation Services v. United States Dep't of Health & Human Services*, 798 F.2d 57, 60 (2d Cir. 1986) (describing Vermont's amendments of disposition-order-review statutes as an effort to render state eligible to receive additional federal funds). The mistake was not recognized before the bill became law.

The State acknowledges the change reflected in the present statute, § 5531(a), containing the words "the minority of the child," in place of the words "a person's twenty-first birthday" inserted in the summer of 1981, was done without a conscious design to change the law. It no doubt happened as a result of a series of oversights. The State maintains, however, that it is for the Legislature in its discretion to correct any mistake. The judiciary, it argues, is not the appropriate branch of government to interfere. The State points to various attempts to amend § 5531(a) to return the age limitation to twenty-one, which have failed. We disagree with the State, because the present case presents us with an issue of statutory interpretation unquestionably within the role of the judiciary.

The bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature. *Hill v. Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983) ("Underlying all other rules of construction is the fundamental rule that [the Court] must ascertain and give effect to the true intent of the [L]egislature, . . . for it is that intent which constitutes the law."). Therefore, when the plain meaning of the statute contradicts the intent of the Legislature, "we are not confined to a literal interpretation of the statutory language." *State v. Baldwin*, 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981). We may correct a statute whose language does not promote the intent of the Legislature due to clerical error in transcription, writing, or redrafting. See *Schultze v. Landmark Hotel Corp.*, 463 N.W.2d 47, 49 (Iowa 1990) (clerical error misidentifying event that tolls statute of limitations for wrongful death action could have been corrected by court so as not to frustrate obvious legislative intent); *Curry v. Department of Corrections*, 423 So. 2d 584, 585 (Fla. Dist. Ct. App. 1982) (although legislature failed to amend mandatory gun law to reflect repeal of related statutes, court had power to correct mistake without infringing on powers of legislature); *Association of Texas Professional Educators v. Kirby*, 788 S.W.2d 827, 830 (Tex. 1990) (where undisputed testimony, official legislative journals and stipulation by attorney general conclusively showed that bill signed by governor was not bill passed by legislature, court would not enforce it).

We continue to encourage plain meaning statutory construction. Given the obvious clerical oversight in the enactment

of § 5531(a) in 1982, however, we have little difficulty giving effect to the legislative purpose expressed in the summer 1981 amendment. Otherwise, we would be giving the statute a meaning not intended to be the law of Vermont.

We cannot ignore the time and effort devoted to broadening control over young offenders over eighteen by the special session, especially when to do so would make for an incongruous statutory scheme. Only the earlier retention-of-custody provision conforms with the obvious intent of the Legislature. See *Betts v. Weinberger*, 391 F. Supp. 1122, 1129 (D. Vt. 1975) (although provision disallowing windfall welfare benefits was deleted, court would read statute in a manner "consistent with the original operation and effect" of the earlier version in order to "conform to the intent of Congress as expressed in the legislative history"). The error emerging from the enactment of an unrelated "housekeeping bill" on review of custody orders should not prevail over the *intended* result of the extraordinary session. Because it is our role to interpret statutes so as to give them effect, we read these statutes to allow SRS custody to continue to age twenty-one.

*Affirmed.*