¶ 24.
Eaton, J.,
dissenting. I cannot join the majority’s interpretation of 7 V.S.A. § 658(a)(2), which elevates a rule of statutory construction over legislative intent. The majority initially states *415 that a “plain reading” of § 658(a)(2) precludes prosecution of the offense unless the defendant knew that the enabled person was a minor, ante, ¶ 6, but ultimately acknowledges the ambiguous statutory language and relies exclusively on a rule of statutory construction while ignoring more critical factors indicative of a contrary legislative intent. A closer examination of the nature and purpose of the statute and its legislative history reveals that the Legislature never intended to require, as an element of § 658(a)(2), that a defendant know the age of the person enabled in the consumption of alcohol. Accordingly, I respectfully dissent.
¶ 25. Our fundamental judicial role in construing legislative enactments is to ascertain and give effect to the intent of the Legislature. In re C.S., 158 Vt. 339, 343, 609 A.2d 641, 643 (1992) (“The bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature.”). We have repeatedly stated that rules of statutory construction, even the plain meaning rule, are “no more than an aid in our efforts to determine [the] legislative intent” that “constitutes the law.” Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983); see State v. Baldwin, 140 Vt. 501, 510, 438 A.2d 1135, 1140 (1981) (stating that “rules of statutory construction are no more than aids, meaningless in themselves, developed through long years of experience for the sole purpose of assisting the interpreter in achieving [the] goal” of construing legislative intent); cf. State v. Fuller, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995) (stating that in pari materia is statutory rule of construction “to be relied upon where appropriate . . . but not where it leads to a result not consistent with legislative intent” (citations omitted)). “Rules of construction are not laws, hard and inflexible, which must be applied in a given situation simply because it is possible to do so.” Baldwin, 140 Vt. at 511, 438 A.2d at 1140 (emphasis added). Yet, that is precisely what the majority appears to have done.
¶ 26. The rule of construction governing the majority’s holding is described as follows in the principal case upon which the majority relies: “courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word ‘knowingly’ as applying that word to each element.” Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009).[7] In Flores- *416 Figueroa, the Supreme Court considered an aggravated identity theft statute that punishes a person who, while committing other enumerated crimes, “knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person.” 18 U.S.C. § 1028A(a)(1). The court reasoned that it seemed “natural” as “a matter of ordinary English grammar . . . to read the statute’s word ‘knowingly’ as applying to all the subsequently listed elements of the crime,” including that the identification belonged to a real rather than nonexistent person. Flores-Figueroa, 556 U.S. at 650.[8]
*417 ¶ 27. “Nevertheless, the Court did not purport to establish a bright-line rule that a specified mens rea always applies to every element of the offense.” United States v. Washington, 743 F.3d 938, 942 (4th Cir. 2014). Rather, “it approvingly cited Justice Alito’s concurrence for the proposition that ‘the inquiry into a sentence’s meaning is a contextual one.’ ” Id. (quoting Flores-Figueroa, 556 U.S. at 652; see Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 131 (2d Cir. 2009) (same)). Expressing his “concern! ] that the Court’s opinion may be read by some as adopting an overly rigid rule of statutory construction,” Justice Alito “join[ed] the opinion of the Court except insofar as it may be read to adopt an inflexible rule of construction that can rarely be overcome by contextual features pointing to a contrary reading.” Flore s-Figueroa, 556 U.S. at 659, 661 (Alito, J., concurring).[9] In the majority opinion, the Court too recognized that some statutes “typically involve special contexts or themselves provide a more detailed explanation of background circumstances” that would call for a different result, but found “[n]o special context” in the case before it. Id. at 652; cf. Washington, 743 F.3d at 942-43 (declining to apply Flore s-Figueroa. presumption to criminal statute prohibiting persons from knowingly transporting minors in interstate transportation); United States v. Tavares, 705 F.3d 4, 19-20 (1st Cir. 2013) (same); United States v. Daniels, 653 F.3d 399, 409-10 (6th Cir. 2011) (same).
¶ 28. Justice Alito’s concerns have been realized in this case. The majority ignores the special context of this particular statute in favor of an inflexible reading of the Flore s-Figueroa. presump *418 tion. The majority acknowledges that the presumption is limited and can be negated by legislative history, but then makes only a brief examination of the statute and its history before finding no logic or rationale in support of a conclusion that the Legislature did not intend to extend the “knowingly” scienter element in § 658(a)(2) to the age of the person enabled. For the reasons discussed below, I believe that the nature and purpose of the statute, as well as its legislative history, support such a conclusion and overcome the Flore s-Figueroa presumption.
¶ 29. The law prohibiting persons from selling or furnishing alcohol to minors has been on the books, virtually unchanged, since 1949. See 1949, No. 144, § 2. As the majority acknowledges, we have always considered that provision, now set forth in § 658(a)(1), to make the offender strictly liable irrespective of whether the offender knew that the person furnished or sold the alcohol was a minor. See Kerr, 143 Vt. at 605, 470 A.2d at 674 (citing § 658 as example “of statutory crimes in which scienter is not required for conviction”).
¶ 80. The provision at issue in this appeal regarding enabling minors to consume alcohol, § 658(a)(2), was added to the statute in 1998. 1997, No. 117 (Adj. Sess.), § 5. Because there is some doubt as to the extent of the scienter element contained in the provision, we examine, in addition to “the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement.” Perry v. Med. Practice Bd., 169 Vt. 399, 406, 737 A.2d 900, 905 (1999); see Dep’t of Corrections v. Human Rights Comm’n, 2006 VT 134, ¶ 7, 181 Vt. 225, 917 A.2d 451 (stating that “we effectuate legislative intent by looking to the statute’s language and any legislative history, as well as the legislative policy the statute was designed to implement”) (quotations omitted).
¶ 81. Section 658(a)(2) was added to the statute as part of a comprehensive law designed to combat drunk driving in Vermont, with a particular emphasis on preventing drunk driving by youths. The lengthy and detailed legislative findings proposed by the House in support of the law identify, among other things, both the deficiencies in the then-current DUI enforcement program and the components that should be part of a comprehensive and effective DUI prevention and enforcement program. House Proposed Amendments to S. 185, H. Journ. 816-19, 1997-1998 Gen. Assem. Bien. Sess. (Vt. February 8, 1998). Among the six notable deficien- *419 cíes in the then-current enforcement program, the Legislature found that: (1) “[a] disproportionate number of DUI offenders are young persons”; and (2) “[tjhere are insufficient criminal and civil consequences for persons (youths and adults) secondarily responsible for DUI.” Id. at 318 (emphasis added). Moreover, among the components of the new enforcement program identified in the proposed legislative findings in support of Act 117, the House cited “revised and enhanced criminal and civil penalties for persons who enable and who are secondarily responsible for DUI.” id. at 318-19 (emphasis added). These particular deficiencies in the old program and improvements brought by Act 117 were addressed, at least in part, in the revision of § 658.
¶ 32. With that in mind, we examine the legislative history of Act 117. The initial Senate bill did not amend § 658, which, as noted, criminalized the selling or furnishing of alcohol to a minor without regard to whether the offender knew the age of the recipient. The House proposed amending the bill to have § 658(a) read as follows:
(a) A person, licensee or otherwise, shall not:
(1) sell, furnish or knowingly enable, facilitate, assist or permit the sale or furnishing of malt or vinous beverages or spirituous liquors to a person under the age of 21; or
(2) knowingly enable, facilitate, assist or permit the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.
S. 185, 1997-1998 Legislative Session, House Proposal of Amendment, available at http://www.leg.state.vt.us/docs/1998/bills/house/S-185.HTM (emphasis added).
¶ 33. Most notable about the proposed House amendment is that a scienter element was inserted for certain actions — including enabling the sale, furnishing, or consumption of alcohol — but the selling or furnishing of alcohol continued to have no scienter element. This is notable in two respects. First, it demonstrates that the House intended to restrict the scienter element to certain actions, including enabling, but not to the age of the recipient. This is clear because the phrase “to a person under the age of 21” at the end of the proposed § 658(a)(1) is the object of *420 all of the verbs in the sentence, including “sell” and “furnish,” both of which precede and are not modified by the word “knowingly.” The majority rejects this notion, but even defendant, in his advocacy role, does not dispute the State’s position that the new “knowingly” scienter element in the House version did not extend to the prepositional phrase at the end of the sentence, which referred back to all of the verbs, including “sell” and “furnish.” Rather, defendant surmises that a later conference committee amendment was aimed at extending the new scienter element, not only to the enabling action, but also to the age of the person enabled. Second, restricting the new scienter element to the enabling action makes perfect sense. A person cannot sell or furnish alcohol to someone without knowing that he or she is doing it, but one can enable the consumption of alcohol by another without knowing it. Plainly, the House wanted to make sure that a person cannot be found liable for unknowingly enabling the consumption of alcohol — for example, by having alcohol in the house that is accessed when the adults are away.
¶ 34. As noted, a conference committee was formed to address various disagreements concerning Act 117. Based on the recommendation of that committee, § 658 was amended to include its current language:
(a) No person shall:
(1) sell or furnish malt or vinous beverages or spirituous liquors to a person under the age of 21; or
(2) knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.
¶ 35. Legislative counsel’s summary of Act 117, as passed, states, in relevant part, that the law amended the offense of the sale of alcohol to minors by “knowingly enabling consumption” and increasing the penalties. Legislative Counsel, Summaries of Acts and Resolves, Act 117 (S. 185), available at http:// www.leg.state.vt.us/docs/1998/acts/actll7SUM.HTM. There is no indication in the summary that the word “knowingly” in § 658(a)(2) applied not only to the act of enabling but also to the age of the recipient. See State v. Kenvin, 2011 VT 123, ¶ 25 n.3, 191 Vt. 30, 38 A.3d 26 (stating that summaries of passed bills by legislative counsel “are routinely consulted and cited by courts as evidence of *421 legislative intent”). And, in fact, the majority’s decision imposing such a construction of § 658(a)(2) is inconsistent with the legislative findings, noted above, indicating the Legislature’s intent to address the scourge of drunk driving, particularly by youths, by enhancing the criminal and civil consequences for persons who enable and who are secondarily responsible for DUIs.
¶ 36. The question arises then — what was the purpose underlying the committee’s changes to the House’s amended version of § 658? It appears that the committee’s changes were limited to clarifying and streamlining the House version. The committee removed the redundant verbs “facilitate, assist, and permit the sale or furnishing of’ while retaining the verb “enable” with the preceding scienter element, “knowingly.” Instead of having two separate sections repeating the verb “enable” for both sale and consumption, the committee placed “enable” in one subsection aligned with the more general term “consumption.” There is no indication that the committee intended to make a significant change to the House amendment — and to the long history of the statute as a strict liability offense with respect to the age of the recipient — by extending the scienter element beyond the verb “enable” to the age of the recipient. Indeed, it is difficult to fathom a purpose for doing so, and, as noted, the summary prepared by legislative counsel makes no mention of extending the scienter to the age of the recipient, stating only that the new law includes “knowingly enabling consumption.”
¶ 37. In short, the purpose and legislative history of § 658(a)(2) strongly suggest that the Legislature did not intend to extend the scienter element modifying the verb “enable” to require that the enabler know the age of the person enabled. Such a construction of the statute undercuts the policies behind the law and is not supported by the legislative history. These factors should control over a rule of construction concerning the norms of English grammar. See State v. Lynch, 137 Vt. 607, 613, 409 A.2d 1001, 1005 (1979) (“[Legislatures are not grammar schools; and, in this country at least, it is hardly reasonable to expect legislative acts to be drawn with strict grammatical or logical accuracy.” (quotation omitted)).
¶ 38. Moreover, the majority’s construction rewards ignorance. For example, the parents who host their college-aged child’s party may avoid all liability for enabling consumption of alcohol by minors simply by not furnishing the alcohol and not determining *422 the age of the party attendees. “Ignorance is bliss” cannot have been what the Legislature intended. It makes no sense to hold a seller or furnisher strictly liable for allowing alcohol to get into the hands of minors but to require one who enables consumption by a minor to have knowledge of the age of the consumer. The acts undertaken by the seller/furnisher and the enabler have the same result, alcohol in the hands of a minor, and the same risk of injury or death, as this case so heartbreakingly demonstrates. If the Legislature intended to criminalize the sale or furnishing of alcohol to a minor despite the seller or furnisher’s lack of knowledge of the age of the minor, as they have done, I see no reason why they would draw a distinction to require such knowledge for enabling the consumption.
¶ 39. “This Court will not imply a mental requirement . . . when the statutory language cuts against such a result and the policy behind the statute would be defeated.” State v. Searles, 159 Vt. 525, 527, 621 A.2d 1281, 1283 (1993) (quotation omitted). In determining whether the Legislature intended a statute to impose strict liability, we have examined, in addition to the statutory language, the following factors: “The severity of the punishment; the seriousness of the harm to the public; the defendant’s opportunity to ascertain the true facts; the difficulty of prosecution if intent is required; and the number of prosecutions expected.” State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889-90 (1989). All of these factors favor imposing strict liability in the instant case with respect to the age of the victim. The punishment is not particularly severe, and yet the potential harm to the public is great. The person knowingly enabling consumption can easily ascertain the age of the enabled person, and yet, as is evident from this case, proving that the enabler knew the recipient’s age can be problematic.
¶ 40. The majority declines to consider these factors, noting that § 658(a)(2) is not silent as to mens rea but rather contains a scienter element. That may be so with respect to the prohibited action of enabling the consumption of alcohol, but the question posed in this case is whether the scienter element contained in the statute extends beyond the enabling action to the age of the person enabled. Thus, the same factors are in play, and they all — along with the statute’s purpose and legislative history — cut against the majority’s holding. For the above reasons, I respectfully dissent.
*423 ¶ 41. I am authorized to state that Chief Justice Reiber joins this dissent.

 The majority also cites § 2.02(4) of the American Law Institute’s Model Penal Code, which provides that “[w]hen the law defining an offense prescribes the kind *416 of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.” This provision is part of a section that stands for the more general principle that “a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.” Model Penal Code §2.02(1). The section would essentially eliminate all strict liability criminal offenses except for those imposing only fines. See id., comment 1, at 229 (“This section expresses the Code’s basic requirement that unless some element of mental culpability is proved with respect to each material element of the offense [except for offenses for which only fines may be imposed], no valid criminal conviction may be obtained.”). It has not been adopted in Vermont, however, and, in fact, it is inconsistent with the very statute we are construing. See State v. Kerr, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983) (refusing to read scienter element into statute that criminalizes possession of firearm during commission of felony and noting other “statutory crimes in which scienter is not. required for conviction, for example, the unlawful furnishing of alcoholic beverages under 7 V.S.A. § 658, so-called statutory rape, certain motor vehicle offenses, and others” (citation omitted)); see also Model Penal Code § 2.02(4), comment 6, at 246 n.38 (noting that Vermont has not explicitly dealt “with the issue of the application of the mental element required by the substantive offense to all of the material elements thereof’). Indeed, as the majority acknowledges, in a recent decision we declined to apply individual sections of the Model Penal Code to our homicide statute. State v. Congress, 2014 VT 129, ¶ 39 n.5, 198 Vt. 241, 114 A.3d 1128.

 The majority’s statement that this Court has “adopted” the rule of construction applied by the majority in Flores-Figueroa is an overstatement. See ante, ¶ 11. To be sure, in State v. Amsden, we cited Flores-Figueroa in support of our conclusion that the adverb “willfully” in our cruelty-to-a-child statute, 13 V.S.A. § 1304, modified not only the verbs in the statute, including “neglects” and “exposes,” but also the adverbial phrase following those verbs — “such child ... in a manner . . . to endanger his or her health.” 2013 VT 51, ¶ 33, 194 Vt. 128, 75 A.3d 612. In that case, however, there was no special context to assume otherwise, and it made little sense to have willfully modify the verb “exposes” without it also modifying the adverbial phrase explaining what the child was being exposed to — danger.
Maine, for example, has statutorily adopted this rule of construction and, to a large extent, the Model Penal Code principles noted in footnote 7. See Me. Rev. *417 Stat. Ann. 17-A, § 34(1 )-(2) (stating that, except as specifically provided, “[a] person is not guilty of a crime unless that person acted intentionally, knowingly, recklessly or negligently, as the law defining the crime specifies, with respect to each other element of the crime,” and “[w]hen the definition of a crime specifies the state of mind sufficient for the commission of that crime, but without distinguishing among the elements thereof, the specified state of mind applies to all the other elements of the crime”). Vermont has not done so, however, and we should not apply the rule of construction as if we have.

 Justice Scalia also wrote a concurring opinion, joined by Justice Thomas, which agreed with the Court that, in that particular case, once “knowingly” was understood to modify the object of the verbs in the sentence, ‘There [was] no reason to believe that it [did] not extend to the [prepositional] phrase which limits that object.” Flores-Figueroa, 556 U.S. at 657. Justices Scalia and Thomas declined to join, however, the notion that the statutory rule of construction applied by the majority was “a normative description of what courts should ordinarily do when interpreting [criminal] statutes.” Id. at 658.