## Neil and Barbara Shepard Dorset Street Project

[584 A.2d 421]

No. 89-547

Present: Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.

Opinion Filed November 9, 1990

*E. William Leckerling* of *Lisman & Lisman*, Burlington, for Plaintiffs-Appellants.

*Steven F. Stitzel* of *McNeil & Murray*, Burlington, for Defendant-Appellee.

**Morse, J.** Appellants Neil and Barbara Shepard appeal from a superior court order upholding a determination of necessity to condemn their property. We affirm.

The facts are not in dispute. The City of South Burlington seeks to reconstruct approximately one mile of Dorset Street between Williston Road and Kennedy Drive. This reconstruction (the Dorset Street project) will widen Dorset Street to two northbound and two southbound traffic lanes separated by a raised median strip. The Shepards own an office building located on the west side of Dorset Street. The proposed median strip will prevent vehicles from making left hand turns into or out of their property.

The City commenced proceedings to lay out a public highway pursuant to §§ 701–819 of Title 19 and subsequently issued an order condemning a portion of the Shepards' property abutting Dorset Street. The Shepards petitioned the superior court for relief from that order, 19 V.S.A. § 740, and the superior court appointed three commissioners to hear evidence. 19 V.S.A. § 741. The commissioners issued a report for review by the court, 19 V.S.A. § 742, upholding the necessity of condemnation. However, before the superior court took action on the commissioners' report, the Shepards moved to vacate the City's initial condemnation order and to dismiss the superior court action.

They maintained the superior court lacked subject matter jurisdiction to hear the appeal because the Dorset Street project is a "limited access facility," which can be initiated and created only by the state transportation agency. The court denied the Shepards' motion to dismiss and issued a final order upholding the commissioners' determination of necessity. The Shepards appeal both actions.

The Shepards contend that the superior court was wrong (1) in failing to find as a matter of law that the Dorset Street project is a limited-access facility, and (2) in holding that 19 V.S.A. § 1703 does not vest the agency of transportation with exclusive authority for initiating and creating limited-access facilities. We affirm on the second issue, although on somewhat different grounds than the court below, and therefore need not reach the first issue.

Under 19 V.S.A. § 1703, the agency of transportation

> with the approval of the governor, and when appropriate in cooperation with any federal, state, provincial or local agency . . . having authority to participate in the construction and maintenance of highways, *may* plan, designate, establish, construct, regulate, vacate, alter, improve, maintain and provide limited access facilities for public use wherever the agency, with the approval of the governor decides, that the protection of existing businesses or traffic conditions, present or future, will justify the special facilities. However, within cities and villages that authority shall be subject to such municipal consent as may be provided by law. Town highways *may* be designated as limited access using this title after approval of the selectmen. (Emphasis added.)

Focusing on the word "may," the court characterized the agency's role in the process as "nonmandatory," i.e., contemplating that either the agency or a municipality could initiate the process of designating a limited-access facility and in any case giving the municipality the last word on the subject.

The court's conclusion is correct, but its approach is somewhat oversimplified. The statutory scheme on highways is complex, constituting all of Title 19 as well as portions of other titles, with many interrelated provisions. In this case, a single

word, especially one as ubiquitous and ill-defined as "may," is too fragile a base on which to build a statutory analysis. Rather, to effectuate the legislative intent we "look to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law." *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989). In this case we construe the provisions on limited-access facilities within the entire statutory scheme dealing with highways. See *Blundon v. Town of Stamford*, 154 Vt. 227, 229–30, 576 A.2d 437, 439 (1990) (court must read statute sections "in context and the entire scheme in pari materia").

Highways bind localities into state and interstate communities. Consequently, highway issues—construction, maintenance, safety—are areas of mutual interest between state and local (and even federal) governments. Title 19 reflects those shared concerns by sharing responsibilities: some expressly delegated to towns, some expressly reserved for the state, some requiring dual action by both state and town. See, e.g., the provisions of chapter 3 on town highways: the state determines which highways are class 1, 19 V.S.A. § 302(a)(1); the town, with state approval, designates class 2 highways, 19 V.S.A. § 302(a)(2); and the town determines which highways are class 4, 19 V.S.A. § 302(a)(4).

Traditionally, towns have had considerable control over local highways. However, with the increasing complexity of the highway network and the advent of the interstate highway system, the legislature—motivated by concerns about safety and highway efficiency, see *State Highway Board v. Jackson*, 128 Vt. 17, 22, 258 A.2d 575, 579 (1969)—adopted provisions for the creation of limited-access highways. At first the limited-access provisions applied solely to roads in the interstate highway system. 1955, No. 270, § 3. That section was later repealed, 1967, No. 161, and the limited-access provisions were no longer applicable solely to interstate highways. *State Highway Board v. Jackson*, 129 Vt. 288, 291–92, 276 A.2d 620, 621–22 (1971) (construing predecessor statute, 19 V.S.A. § 1861a, to apply to a major arterial highway comparable to, but not part of, the interstate system).

Throughout the evolution of the statutory scheme, the broad definition of limited-access facility has remained the same. In 19 V.S.A. § 1702, a limited-access facility is defined as

> a highway or street over, from, or to which owners . . . of abutting land . . . have no right, or easement, or only a limited right, or easement, of access, light, air, or view by reason of the fact that their property abuts upon the limited access facility or for any other reason.

Interpreted literally, this definition could apply to virtually any highway and, read in conjunction with 19 V.S.A. § 1703, gives the state, through the agency of transportation, the capability to intervene in local highway planning whenever appropriate.

However, the sweeping scope of "limited access" also suggests that the agency's participation should be optional rather than mandatory for each highway project. Requiring the agency to get involved in every project with limited-access characteristics would be an inefficient use of resources, going beyond the purposes of the limited-access scheme. Nor would it be reasonable to suppose the legislature intended to burden the towns with a cumbersome state-coordinated approval process for every local highway project with a median strip. That interpretation would eviscerate the towns' share of highway responsibility, rendering many other highway provisions—e.g., chapter 7 (laying out, discontinuing, and reclassifying highways)—not merely ineffective but virtually meaningless. We decline to construe the statutory scheme as mandating that all limited-access facilities originate with or receive approval from the agency of transportation. See *In re R.S. Audley, Inc.*, 151 Vt. at 517, 562 A.2d at 1049 (statutes to be construed "so that they will neither be rendered ineffective nor lead to irrational consequences"); see also *Blundon v. Town of Stamford*, 154 Vt. at 229–30, 576 A.2d at 439 ("'When two statutes deal with the same subject matter and one is general and the other special, they must be read together and harmonized if possible to give effect to a consistent legislative policy.'") (quoting *City of Rutland v. Keiffer*, 124 Vt. 357, 363, 205 A.2d 400, 404 (1964)); *State v. Foley*, 140 Vt. 643, 646, 443 A.2d 452, 453 (1982) (presumption against implied repeal).

*Affirmed.*