# Randall G. Munson v. City of South Burlington, Vermont and State of Vermont Agency of Transportation

[648 A.2d 867]

No. 93-444

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 2, 1994

*Leslie C. Pratt*, South Burlington, for Plaintiff-Appellant.

*Steven F. Stitzel* of *Stitzel & Page, P.C.*, Burlington, for Defendant-Appellee City of South Burlington.

*Jeffrey L. Amestoy,* Attorney General, and *Scott A. Whitted,* Assistant Attorney General, Montpelier, for Defendant-Appellee State of Vermont.

**Johnson, J.** Plaintiff sued to enjoin the City of South Burlington from using land acquired by eminent domain for a highway project to provide a right-of-way for bicycle paths. The Chittenden Superior Court found that because the City failed to follow the statutory procedure for condemnation of land for a bicycle path, the City's condemnation of plaintiff's land for such a path was invalid. The court also ruled that (1) plaintiff was not entitled to equitable relief even though the condemnation was invalid, (2) his property had not been inversely condemned, and (3) he failed to prove a claim as a taxpayer that the City lacked the authority to expend state funds on bicycle paths. We reverse, in part, concluding that the City validly condemned plaintiff's land; and, in all other respects, we affirm the decision of the trial court.

In 1984 the City of South Burlington and the Vermont Agency of Transportation (AOT) initiated a project to reconstruct a portion of Dorset Street. The project, approximately one mile in length, commenced at the intersection of Dorset Street and Williston Road and extended south to the intersection of Dorset Street and Kennedy Drive. The final proposal included plans for bicycle paths on both sides of Dorset Street, with the paths to run between the travel lanes and the sidewalks. Subsequently, the City Council noticed and held a public hearing on the issue of "necessity," and found necessity for the taking.

Plaintiff owns property on the east side of Dorset Street containing two buildings, one housing his construction business and the other an unrelated retail business. The City Council issued an order condemning a portion of plaintiff's property for the Dorset Street project and awarded plaintiff $36,500 in damages. Plaintiff accepted the award and did not appeal it.

This dispute arose when the boundaries of the property were marked for the commencement of construction in May 1991. It was then that plaintiff alleges he became aware that one of his buildings will stand three feet closer to the right-of-way than was shown on the project map given to him. Both buildings are actually the same distance from the right-of-way. On the map, however, the buildings

were not depicted as being equidistant from the right-of-way. Instead, one was shown as being three feet farther back from the right-of-way than the other. The result is that both buildings will be set back twenty-two feet, rather than one having a setback of twenty-five feet and the other a setback of twenty-two feet, as the map showed. It is undisputed, however, that the City took no more land than was noticed.

Plaintiff argues that if he had known that the setback distance of the one building would be twenty-two rather than twenty-five feet, he would have challenged the necessity of the taking. He also argues that the loss of the three feet and resulting traffic flow problems will cause him damages in the amount of two to three million dollars over the next ten years. To obtain relief, plaintiff commenced the present action on July 31, 1991, claiming (1) that because of the City's misrepresentation of the setback distance, he was entitled to equitable relief in the form of a twenty-five foot setback, (2) that because the City had not complied with the applicable statutory procedure to condemn land for a bicycle path, the condemnation of that land was invalid, (3) as a taxpayer, that the City and State lacked legal authority to condemn the land of plaintiff and others for a bicycle route, making the condemnation void, and (4) that he is entitled to damages because his land was inversely condemned.

On cross-motions for summary judgment, the court ruled that the condemnation process for the bike path land was void ab initio because the City did not follow the proper statutory condemnation procedures. It ruled in defendants' favor on all other counts and denied plaintiff equitable relief. Thus, the trial court concluded that plaintiff has title to the island of land that was to be the bicycle path, but which is separated from the rest of his land by the property condemned for the sidewalk. Accordingly, it concluded that plaintiff must refund to the City the money paid for the bicycle path land. The present cross-appeals followed.

## I.

The first issue we address is whether the City may use a portion of land that it acquired for a highway under 19 V.S.A. chapter 7 to develop a bicycle route. Plaintiff argues, and the trial court found, that the taking, insofar as it relates to the bicycle routes, was void ab initio because 19 V.S.A. § 2307(b) required the City to follow the condemnation procedure set out in 19 V.S.A. chapter 5 (governing highway condemnation by the state through the AOT) rather than

that in chapter 7 (governing highway condemnation by cities and towns) to condemn land for a bicycle route. We disagree.

Plaintiff's argument is founded on 19 V.S.A. § 2307(b), which provided that "[i]n the construction . . . of bicycle routes which involves the taking of private lands, the legislative body of a municipality shall follow the procedures outlined in 19 V.S.A. chapter 5 for the taking of private land for highways."[1] The plain meaning of this statute, plaintiff argues, is clear—a municipality must follow chapter 5 to condemn land for a bicycle route; it is powerless to include bike paths within a highway condemnation under 19 V.S.A. ch. 7. Plaintiff's argument fails because it is not consistent with the statutory scheme at issue and could lead to absurd results.

It is a well-established canon of statutory construction that statutes relating to the same subject matter should be construed together and read in pari materia, if at all possible. *State v. Murray*, 159 Vt. 198, 201, 617 A.2d 135, 137 (1992). As we stated in *In re Shepard*, 155 Vt. 356, 584 A.2d 421 (1990), that rule applies with particular relevance to highway law:

> The statutory scheme on highways is complex, constituting all of Title 19 as well as portions of other titles, with many interrelated provisions. . . . [T]o effectuate the legislative intent we "look to the whole statute, the subject matter, its effects and consequences, and the reason and spirit of the law."

*Id.* at 357–58, 584 A.2d at 422 (citations omitted). The provisions of 19 V.S.A. chapter 7 and 19 V.S.A. § 2307 can be construed in harmony with each other.

Chapter 7 grants municipalities broad powers to lay out highways and to acquire the property required for their construction. On the other hand, 19 V.S.A. § 2307(b) relates, in relevant part, solely to "the construction . . . of bicycle routes which involves the taking of private lands." Section 2307(b) does not refer to highway construction and does not purport to govern the taking of private lands for highway purposes. It applies where the municipality seeks to construct a bicycle route only. It also does not purport to apply when a municipality seeks to construct a highway that incorporates a bicycle route. This interpretation is supported by 19 V.S.A. § 2304, which

---

[1] This section has since been amended to provide that a municipality may follow the condemnation procedure established in either chapter 5 or chapter 7. 1991, No. 175 (Adj. Sess.), § 12 (eff. May 15, 1992).

provided in relevant part that "[b]icycle routes may be incorporated into designs for the construction . . . of state and town highways."[2]

Moreover, plaintiff's proposed interpretation has the potential to lead to absurd results. According to plaintiff, a municipality seeking to build a highway, bicycle route, and sidewalks must follow two separate condemnation procedures. Aside from the duplication in effort and waste of resources involved, the existence of simultaneous but independent procedures could lead to inconsistent results. For example, in this case, the municipality might have found itself with a bicycle route without an expanded highway, or a highway and sidewalks where each landowner retained the island of land that was to have been the bicycle route. We avoid interpretations of statutes that lead to absurd results. *O'Brien v. Island Corp.*, 157 Vt. 135, 139, 596 A.2d 1295, 1297 (1991).

Nonetheless, for two reasons, plaintiff argues that the Legislature intended to create separate condemnation procedures. First, plaintiff argues that in 1974 the Legislature considered but rejected a section of a bill that would have provided authority for municipalities to condemn land for bicycle routes using chapter 7. S.49, § 2055, 1973 (Adj. Sess.).[3] The trial court agreed that the significance of the failure to enact that section of the bill was that "the legislature in 1974 was clearly skeptical about granting condemnation authority to municipalities for establishing bike paths." This inference is based on speculation, not on sound principles of construction. Rejection of an amendment alone does not intrinsically indicate legislative opposition to the substance of the amendment. For example, the Legislature might just as well have believed that adoption of the amendment was unnecessary. See 2A Sutherland, Statutory Construction § 48.18 (5th ed. 1992).

Second, plaintiff argues that the 1992 amendment to 19 V.S.A. § 2307(b), adding the language "or chapter 7," is dispositive of this case. The trial court interpreted the 1992 amendment as confirming plaintiff's position:

---

[2] Section 2304 was repealed in 1993. 1993, No. 61, § 24 (eff. June 3, 1993).

[3] This section was deleted from the bill approved by the House, but it was included by mistake in the bill approved by the Senate. The initial codification included this section. Despite its publication, however, § 2055 is not valid because the Senate never approved it. See Vt. Const. ch. II, § 6 ("no bill, resolution, or other thing, which shall have been passed by the [Senate or House of Representatives], shall have the effect of, or be declared to be, a law, without the concurrence of the other").

The legislature could just as easily have changed the section to provide for only chapter 7 procedures or stated that this change was a codification of existing law. It did neither, which leads us to the conclusion that prior to the latest amendment, chapter 5 was the *only* proper procedure available to a town or city to condemn land for a bike path.

This reasoning is also speculative. The question is what was the Legislature's intent at the time it enacted the statute at issue in this case. It is not what a subsequent Legislature believed the earlier Legislature intended. All that is certain from the 1992 amendment is that the Legislature confirmed that after the effective date of its enactment, multiple-use projects including a bicycle route could be proposed under chapter 7. There is no bar to amending a law to render clearer and more certain something that was intended, but not unquestionably expressed, in an earlier enactment. See *Caledonian-Record Publishing Co. v. Walton*, 154 Vt. 15, 25, 573 A.2d 296, 302 (1990) (sometimes a statute may be amended to exclude possible grounds of misinterpretation).

■■ In sum, when reading the statutes in pari materia, it is entirely consistent to construe § 2307(b) to require that municipalities follow 19 V.S.A. chapter 5 when taking private lands solely for bicycle routes, but to allow them to proceed under chapter 7 when the dominant purpose is the laying out of a highway, even if a bicycle route is part of the overall project. Accordingly, the City proceeded properly under 19 V.S.A. chapter 7. Summary judgment in plaintiff's favor on this issue must be reversed. Judgment should be entered in defendants' favor, and plaintiff should not be required to refund to the City the money paid for the bicycle path land.

## II.

The second question we must address is whether plaintiff may challenge the project's necessity, enjoin the project, and seek damages under 19 V.S.A. § 740, even though the time for such a challenge has run. The trial court found that plaintiff had an adequate legal remedy to challenge the amount of damages under 19 V.S.A. § 726. We agree.

■ Pursuant to 19 V.S.A. § 740, an aggrieved property owner who is dissatisfied with the way a highway is laid out, the necessity of the condemnation, or the damages awarded may petition the superior

court for relief. The petition must be brought within twenty days after the order of the selectmen is recorded. 19 V.S.A. § 740. Plaintiff's argument is that the twenty-day time limit should not apply in this case because of the City's misrepresentation regarding the building setback distance. Plaintiff argues that the misrepresentation invalidated the notice he received and thus his challenge should not be time-barred.[4]

We affirm because even if plaintiff's allegations are taken as true, plaintiff's § 740 claim was not timely. The trial court found that regardless of the validity of the initial notice to plaintiff, plaintiff indisputably had actual notice of the true boundaries of the taking and the setback in May 1991 when the construction markers were placed on his property. Thus, the court concluded that even if it applied a discovery rule to the limitation period, plaintiff's petition under § 740 would still be time-barred because it was not filed until August of 1991. Plaintiff has not challenged this conclusion.

In light of our conclusion that the condemnation is valid and no longer subject to challenge, we need not reach plaintiff's contention that his property was inversely condemned. See *Martin v. Port of Seattle*, 391 P.2d 540, 542 n.1 (Wash. 1964) (inverse condemnation "is the popular description of an action brought against a governmental entity having the power of eminent domain to recover the value of property which has been appropriated in fact, but with no formal exercise of the power"). Similarly, we need not reach plaintiff's claim for trespass damages.

### III.

Finally, plaintiff appeals the summary judgment award to the City on plaintiff's taxpayer claim. Plaintiff asserts that the expenditure of public funds on the bicycle route was illegal because the City (1) failed to properly condemn the land, and (2) failed to adhere to 19 V.S.A. § 2304. Given our holding in part I, plaintiff's first ground is without merit. We also conclude that the trial court properly rejected plaintiff's second ground.

Section 2304 provided that "[b]icycle routes may be incorporated into designs for the construction . . . of . . . highways when safe routes do not exist along the proposed corridor and upon" specific findings regarding safety, use, costs, and planning. Plaintiff argues

---

[4] Plaintiff also argues an estoppel theory. This argument fails because we agree with the trial court's finding that plaintiff had an adequate legal remedy.

that under § 2304 the AOT should have made the required findings and that, because such findings were not made, the expenditure of funds on the bicycle route is illegal.

Contrary to plaintiff's contention, § 2304 did not mandate that the AOT make the required findings. The statute was silent on this subject. Given that it was the municipality that sought to condemn land for this project, it is logical to conclude that the municipality could make the necessary findings. In this case, though the findings were not necessarily in one single document, they were made. Particularly, the City Council found that the proposed designs would improve traffic safety, that the bicycle routes would conform with and support other planned improvements for the area, and that the potential for bicycle use supported the inclusion of a bicycle route on each side of Dorset Street. Accordingly, the trial court did not err in granting summary judgment for the City.

*The trial court's order granting summary judgment to plaintiff on Count III of his complaint is reversed, and judgment on this count is entered for defendants; in all other respects, the decision of the trial court is affirmed.*