NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 126

No. 2014-196

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Kent Richland, Jr. | May Term, 2015 |

Michael S. Kupersmith, J.

William H. Sorrell, Attorney General, and Benjamin D. Battles, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Rebecca Turner, Appellate Defender, and Oliver Abbott, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **DOOLEY, J.**   Defendant Kent Richland appeals his conviction for enabling the consumption of alcohol by a minor in violation of 7 V.S.A. § 658(a)(2), following a jury trial in Chittenden Superior Court, and the probation conditions imposed by the court at sentencing.  We reverse the trial court's holding with respect to the knowledge requirement of § 658(a)(2) and remand for a new trial.  Because of our disposition on the conviction, we do not reach defendant's challenges to the probation conditions.

¶ 2.    The testimony presented at trial demonstrates the following basic facts.  On May 10, 2013, defendant received a text message from a sixteen-year-old minor asking defendant to purchase alcohol for him.  Defendant agreed but could not find his identification and instead arranged for a friend to purchase the alcohol.  Later that day, defendant's friend purchased a bottle of gin for the minor at a local beverage store.  On the morning of May 11, the minor was found dead near his family home after crashing his all-terrain vehicle (ATV) while intoxicated.

¶ 3.    Defendant was charged with enabling the consumption of alcohol by a minor under 7 V.S.A. § 658(a)(2), which states: "No person shall . . . knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21."[1] At trial, the court instructed the jury on the elements of § 658(a)(2), informing the jurors that the State <u>must</u> prove defendant knowingly enabled the victim to consume alcohol but <u>need not</u> prove defendant knew the victim was under the age of twenty-one.  Defendant objected to the instruction on the age element.  In overruling defendant's objection, the court stated:

> Knowingly is an adverb and it modifies enabled.  It does not affect knowledge of the age of the individual. . . . [I]t's always been generally accepted that certainly the sale of alcohol is a strict liability offense.  And the individual does not have to know that the individual being furnished with a sale of the alcohol was under the age of 21 and I don't know any reason why [the two statutory provisions] should be any different.

_____

[1]  Section 658(a)(1), the companion to § 658(a)(2), provides: "No person shall . . . sell or furnish malt or vinous beverages or spirituous liquors to a person under the age of 21."  Although § 658(a)(1) is not at issue here, an earlier identical version has been construed as a strict liability statute—i.e., having no mental element—see <u>State v. Kerr</u>, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983), and was relied upon by the trial court for its rationale that § 658(a)(2) does not require the State to prove that defendant knew that minor was under the age of twenty-one.  The State similarly invokes § 658(a)(1) in its arguments to this Court.

¶ 4.     Defendant moved for a judgment of acquittal pursuant to Vermont Rule of Criminal Procedure 29, arguing that the evidence was insufficient for a reasonable jury to conclude that he had knowledge of the minor's age or that he created a direct and immediate opportunity for the minor to consume alcohol.  The court denied defendant's motion, finding the evidence sufficient to sustain a jury verdict of guilty and reiterating its statement that the age element is strict liability and does not require proof of knowledge.  Defendant was found guilty after a short jury deliberation and sentenced to twelve-to-twenty-four-months incarceration, all suspended except for six months to serve.[2]  This appeal followed.

¶ 5.     Defendant raises four issues on appeal: (1) the trial court committed reversible error in instructing the jury that § 658(a)(2) does not require knowledge of the minor's age; (2) the evidence presented at trial was insufficient to prove defendant enabled the minor's alcohol consumption; (3) the court's imposition of probation during the pendency of this appeal creates a harsher, indeterminate term of probation, thereby penalizing defendant for exercising his right to appeal; and (4) the standard form probation conditions are invalid.  We agree with defendant on the first issue and hold that § 658(a)(2) requires the State to prove defendant had knowledge of the minor's age and that the court's error in instructing the jury to the contrary was not harmless.  Because we reverse and remand for a new trial, we need not address the remaining three issues.

¶ 6.     Our inquiry here starts with the language of § 658(a)(2).  The issue of whether the age element of § 658(a)(2) requires knowledge is a matter of statutory interpretation, which we

_____

[2]  The court also imposed a $2000 fine, 240 hours of community service, thirty days of service on a work crew, and several standard form probation conditions.  The court informed defendant that his incarceration would be stayed pending an appeal to this Court, but emphasized that defendant would remain on probation during the pendency of the appeal.

review de novo. Stowell v. Action Moving & Storage, Inc., 2007 VT 46, ¶ 9, 182 Vt. 98, 933 A.2d 1128; see State v. Dann, 167 Vt. 119, 132, 702 A.2d 105, 113 (1997) (stating that "the determination of the required mental element is a question of statutory construction"). Our goal in interpreting a statute is to carry out the intent of the Legislature. State v. Leblanc, 171 Vt. 88, 91, 759 A.2d 991, 993 (2000); see State v. Messier, 145 Vt. 622, 627-28, 497 A.2d 740, 743 (1985) (explaining that task of defining crimes generally belongs to Legislature). We start with the plain language of the statute, and if the meaning is clear, we will enforce it according to its terms. Leblanc, 171 Vt. at 91, 759 A.2d at 993. In doing so, "we presume that all language in a statute was drafted advisedly and that the plain ordinary meaning of the language used was intended." Id (quoting Committee to Save Bishop's House v. Medical Center Hospital, 137 Vt. 142, 153, 400 A.2d 1015, 1021 (1979)). As we explain below, based on a plain reading of the statute, we conclude that § 658(a)(2) requires that a defendant know that the person enabled to consume alcoholic is a minor.

¶ 7. The plain terms of § 658(a)(2) include a scienter element: knowledge. The Legislature explicitly imposed criminal liability on individuals who "knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21." 7 V.S.A. § 658(a)(2) (emphasis added). The core of the dispute, however, is not the presence of the scienter element but whether that element attaches to the clause "by a person under the age of 21." The State argues that "knowingly" modifies only the term "enable," the term it immediately precedes, while defendant contends that "knowingly" is read to modify all successive elements of the statute, up to and including the age requirement.

4

¶ 8. When construing a criminal statute, we presume that the Legislature knows how to incorporate a scienter element. See Kerr, 143 Vt. at 605, 470 A.2d at 674; see also Leblanc, 171 Vt. at 92, 759 A.2d at 993 (explaining that Legislature knows how to incorporate terms into statute and that, when such terms are omitted, we presume Legislature intended to do so). The corollary to this assertion is that when the Legislature expressly includes an element of scienter, we presume that it is aware of its effect on the other elements of the statute. Cf. Nelson v. Town of St. Johnsbury, 2015 VT 5, ¶ 15, ___ Vt. ___, ___ A.3d ___ (stating that Legislature was cognizant of meaning of "for cause" and its effect on other terms in town manager statute).

¶ 9. The effect the scienter element has on the other successive elements of a criminal statute is determined by a well-established rule of statutory construction, one that has been codified by the American Law Institute (ALI) and endorsed by both the judicial and legislative branches of state and federal governments,[3] including this Court. ALI's Model Penal Code

---

[3] See, e.g., Colo. Rev. Stat. Ann. § 18-1-503(4) ("When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears."); State v. Denby, 668 A.2d 682, 686 (Conn. 1995) (explaining that "when one and only one [term designating a mental state] appears in a statute defining an offense, it is presumed to apply to every element of the offense unless an intent to limit its application clearly appears"); Scott v. State, 757 S.E.2d 106, 107 (Ga. 2014) (explaining that "a criminal statute that introduces the elements of a crime with the word 'knowingly' is ordinarily construed as applying that word to each element of the offense"); Commonwealth v. Daley, 977 N.E.2d 536, 540 (Mass. 2012) (explaining that "knowingly" modifies all subsequent elements of criminal statute); Or. Rev. Stat. Ann. § 161.115(1) ("If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state."); Commonwealth v. Scolieri, 813 A.2d 672, 678 (Pa. 2002) (explaining that "where the [legislature] sets forth the mens rea requirement for a crime with several elements, the requirement generally applies to all elements"); cf. Rambin v. Allstate Ins. Co., 852 N.W.2d 34, 40 (Mich. 2014) (recognizing that "presumption in favor of a criminal intent or mens rea requirement applies to each element of a statutory crime").

provides: "When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provisions shall apply to all the material elements of the offense, unless a contrary purpose plainly appears." Model Penal Code § 2.02(4).[4] Applying this method of construction to § 658(a)(2), we would distribute the term "knowingly" to all successive elements of the statute, including the age of the minor. This method of construction aligns with our own presumption in favor of requiring an element of mens rea in criminal statutes. See State v. Stanislaw, 153 Vt. 517, 523, 573 A.2d 286, 290 (1990) (explaining that "the existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence[,] . . . [and] unless expressly provided otherwise by the legislature,… a crime is composed of an act and an intent, which concur at a point in time" (emphasis added) (citations omitted)); see also State v. Beayon, 158 Vt. 133, 135, 605 A.2d 527, 528 (1992) (observing that we often have "implied guilty intent as an element when none was expressly provided by the statute").

_____

[4] Although the Vermont Legislature has not enacted all parts of the Model Penal Code, it has drawn from it in drafting a number of our criminal statutes, see State v. Jackowski, 2006 VT 119, ¶ 5, 181 Vt. 73, 915 A.2d 767 (noting that aggravated assault statute was amended to adopt Model Penal Code's approach to mens rea); State v. Fanger, 164 Vt. 48, 52-53, 665 A.2d 36, 38 (1995) (noting that criminal trespass statute was based on Model Penal Code and applying the Code's standard for knowledge under such statute), and, on occasion, we have looked to it in determining the level of culpability in a particular offense, see State v. Amsden, 2013 VT 51, ¶ 23, 194 Vt. 128, 75 A.3d 612 (defining "recklessly"); Dann, 167 Vt. at 132, 702 A.2d at 113 (defining "knowingly"); State v. Sargent, 156 Vt. 463, 466, 594 A.2d 401, 402 (1991) (defining "purposefully" and "knowingly"). Although this has not been true in all cases, see, e.g., State v. Congress, 2014 VT 129, ___ Vt. ___, 114 A.3d 1128 (declining to apply individual sections of Model Penal Code to homicide statute because our homicide statute does not track that of Model Penal Code), we note this only to demonstrate this Court's and the Legislature's familiarity with the Code.

¶ 10. The United States Supreme Court adopted a similar distributive rule in Flores-Figueroa v. United States, 556 U.S. 646 (2009), in which it analyzed the scienter element in 18 U.S.C. § 1028A(a)(1), which criminalizes "knowingly transfer[ing], possess[ing], or us[ing], without lawful authority, a means of identification of another person." Id. at 647. In holding that "knowingly" attaches to all elements of the statute, the Court explained that when a phrase in a criminal statute introduces the elements of a crime with the word "knowingly," it is "ordinarily read . . . as applying that word to each element," id. at 652 (quotation omitted), because "as a matter of ordinary English grammar," such a reading "seems natural," id. at 650. The Court further explained:

> In ordinary English, where a transitive verb has an object, listeners in most contexts assume that an adverb (such as knowingly) that modifies the transitive verb tells the listener how the subject performed the entire action, including the object as set forth in the sentence. Thus, if a bank official says, 'Smith knowingly transferred the funds to his brother's account,' we would normally understand the bank official's statement as telling us that Smith knew the account was his brother's. Nor would it matter if the bank official said, 'Smith knowingly transferred the funds into the account of his brother.' In either instance, if the bank official later told us that Smith did not know the account belonged to Smith's brother we should be surprised.

Id. at 650-51.

¶ 11. We adopted the Supreme Court's Flores-Figueroa rationale in State v. Amsden, 2013 VT 51, where we reviewed 13 V.S.A. § 1304, which criminalizes cruelty to children under the age of ten. The pertinent statutory provision imposes a penalty on anyone "who willfully . . . neglects or . . . exposes such child . . . in a manner . . . to endanger his or her health." 13 V.S.A. § 1304. The State argued that the term "willfully" modifies only "neglects" and "exposes" but not "in a manner . . . to endanger his or her health." Amsden, 2013 VT 51,

7

¶¶ 32-33. In rejecting the State's argument, we applied the rules of English grammatical construction, as explained in Flores-Figueroa, to conclude that the term "willfully" applies to all elements of the statute. Id. ¶ 33. We held that the proscribed act is not merely neglecting or exposing the child but doing so "in a manner to endanger the child's health or welfare"—a single unitary act. Id. "To trigger criminal liability," we further held, "the mental state that must accompany this unitary act is willfulness." Id. (citing Flores-Figueroa, 556 U.S. at 650). Construing the enabling statute in a similar manner requires us to hold that the term "knowingly" applies to the single unitary act of enabling the consumption of alcohol by a person under the age of twenty-one.

¶ 12. We acknowledge that this rule of statutory construction is not without its limitations. As several of the above-cited authorities indicate, the presumption that mens rea attaches to all elements of a statute may be rebutted by a showing of clear legislative intent to the contrary. See supra, n.3. In reviewing the legislative history, we do not necessarily expect to find an express statement from the Legislature regarding its intent to impose strict liability under § 658(a)(2). We can, however, look to the legislative history for evidence that the statute's purpose will be frustrated if the State is required to prove knowledge of the minor's age. For example, in United States v. Washington, 743 F.3d 938 (4th Cir. 2014), the court considered the effect of the term "knowingly" on the victim's age in 18 U.S.C. § 2423(a), the federal human trafficking statute. Section 2423(a) imposes criminal liability upon any person "who knowingly transports an individual who has not attained the age of 18 years" for the purposes of engaging in criminal sexual activity. Turning to the legislative history, the court noted that "Congress enacted the provision to provide minors with special protection against sexual exploitation,"

8

Washington, 743 F.3d at 943, and intended "to protect young persons who are transported for illicit purposes, and not transporters who remain ignorant of the age of those whom they transport." Id. (quoting U.S. v. Jones, 471 F.3d 535, 540 (4th Cir. 2006)). The court concluded that, viewed in this context, the purpose of § 2423(a) was to make the victim's young age an aggravating factor and "not to make the provision protecting minors more difficult to prove than its general counterpart." Id.

¶ 13.   Turning to the legislative history of § 658(a)(2), we do not find such a clear intent.  As the State explained in its brief to this Court, the Legislature enacted the statute as part of a comprehensive scheme to combat drunk driving.  The Legislature's findings indicate a general concern for public safety; cite statistics on incidents of driving under the influence (DUI), alcohol-related traffic fatalities, and the relationship between DUI and other criminal offenses; highlight the limited success of traditional rehabilitation and deterrence methods; and emphasize the need for more aggressive DUI enforcement.  1997, No. 117 (Adj. Sess.), § 1.  The Legislature noted that "a disproportionate number of DUI offenders are young persons"—age thirty-five and under—but its findings say nothing that helps us decide the scope of a mental element, the question before us.  Id.  While it will always be true that a strict liability crime is easier to enforce than one requiring proof of a mental element, there must be some acknowledgment by the Legislature that requiring the State to prove knowledge of age will directly impede the purpose of the statute.[5]  Unlike the age provision in the human trafficking

---

[5]  The State also recounted comments from Governor Howard Dean during his inaugural address on the problems of alcohol abuse and drunk driving among youth, and quoted floor statements about young victims of alcohol-related traffic fatalities.  When pressed at oral argument about the relevance of these statements, the State responded that the legislative history

9

statute at issue in <u>Washington</u>, the age requirement here is not a penalty-enhancing aggravating factor to a general crime.

¶ 14. We are similarly unpersuaded by the State's argument that the Legislature's intent with respect to the scienter requirement of § 658(a)(2) is demonstrated by a proposed amendment to the statute made by the Vermont House of Representatives. The House proposed the following language to the bill, as passed in the Senate:

> (a) A person, licensee or otherwise, shall not:
>
> (1) sell, furnish or <u>knowingly enable</u>, facilitate, assist or permit the sale or furnishing of malt or vinous beverages or spirituous liquors to a person under the age of 21; or
>
> (2) <u>knowingly enable</u>, facilitate, assist or permit the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.

H. Jour. 376, 1997-1998 Gen. Assem., Bien. Sess. (Vt. Feb. 3, 1998). Essentially, the House added the term "knowingly enable" into each provision of the statute. The version was approved by the House, but in response to a report of the Committee of Conference, the "knowingly enable" language was removed from subsection (a)(1) and the version was recommended that was eventually enacted into law. H. Jour. 1902, 1997-1998 Gen. Assem., Bien. Sess. (Vt. Apr. 21, 1998).

¶ 15. The State argues that the House, by inserting the terms "knowingly enable, facilitate, assist or permit" into § 658(a)(1)—a statute whose language long had been understood as imposing strict liability—it clearly did not intend for the mental element to modify anything

---

was meant to "set the stage" and add "a little color to paint the context of why the statute was enacted." The State conceded that it was not "hanging [its] hat on quoted floor statements." While these statements may indicate a general concern about underage drinking and driving, they are far from demonstrating clear legislative intent to rebut the presumption of mens rea.

other than "enable, facilitate, assist or permit." Therefore, as the State argues, because of the parallel structure of the two statutes, as proposed, the House also clearly did not intend for the term "knowingly" in § 658(a)(2) to modify any terms other than "enable, facilitate, assist or permit." The State further contends that when the statute was amended to its current form, the conference committee merely "streamlined" the language, but the substance and intent remained the same.

¶ 16.   In our view, the State's argument has two deficiencies it cannot overcome. The version of the bill voted on by the House of Representatives contained two provisions in subsection (a). In the first provision, the term "knowingly enable" was inserted within the preexisting language. Its placement in the middle of the sentence had no impact on the preexisting elements "sell" or "furnish" such as to change selling or furnishing from a strict liability offense to one requiring mens rea, a point the State and the dissent overlook. Importantly, the first provision contained the exact same interpretation question as the second provision, whether the inserted mental element applied only to enabling, facilitating, assisting, or permitting or also to the age of the person who received the alcoholic beverage.[6] Nothing about the placement of the word "knowingly" in the sentence, or the fact that it was inserted in a sentence that otherwise contained a strict liability offense, indicates that the mental element did not extend to the age of the person receiving the alcoholic beverage. On this point, the logic of the State's argument is flawed. These arguments are unpersuasive.

_____

[6] It is, of course, possible that "knowingly" modifies "enable" but not "facilitate, assist or permit," but it would be difficult to find a reason for differentiating among those elements.

¶ 17. Second, we cannot now speculate as to why the House initially created a crime involving knowingly enabling, facilitating, assisting, or permitting the selling or furnishing of alcoholic beverages to a person under twenty-one years of age, the subject of proposed § 658(a)(1), or why the conference committee did not accept that creation. We emphasize that it takes the concurrence of both chambers to enact legislation, and even if we could accept the logic of the State's argument, there is no evidence that the Senate ever concurred in that logic. Creating legislative intent from a proposed and rejected amendment to a bill is an exercise in unreliable speculation. See Munson v. City of S. Burlington, 162 Vt. 506, 510, 648 A.2d 867, 870 (1994) (stating that Legislature's rejection of statutory amendment is not indicative of its intent and such "inference is based on speculation, not on sound principles of construction").

¶ 18. We also reject the State's—and the trial court's—rationale that because § 658 traditionally had been construed as a strict liability statute, both provisions must still be read in the same manner. We do not dispute the trial court's conclusion that even though § 658 was reenacted, Kerr remains good law in its holding that the selling or furnishing of alcohol to a minor is a strict liability offense. But we fail to see how Kerr controls the question in front of us. If anything, the fact that the Legislature amended § 658 to include a provision on enabling the consumption of alcohol that contains a scienter element signals the Legislature's awareness that it was creating a separate and distinct statutory provision not to be construed in the same manner as its strict liability counterpart. See Doe v. Vt. Office of Health Access, 2012 VT 15A, ¶ 26, 191 Vt. 517, 54 A.3d 474 (presuming that when Legislature amends statute it intends to change its meaning).

12

¶ 19. The State's remaining arguments center on its assertion that the § 658(a)(2) is silent as to the mens rea requirement and that, because of this silence, we must look to several factors to determine legislative intent. See State v. Bourn, 2012 VT 71, ¶ 10, 192 Vt. 270, 58 A.3d 236 ("When the Legislature is silent as to the mens rea requirement for a particular offense, this Court will not simply assume that the statute creates a strict liability offense, but will try to determine the intent of the Legislature.") (citation omitted); State v. Searles, 159 Vt. 525, 528, 621 A.2d 1281, 1283 (1993) (stating that we consider several factors in determining Legislature's intent to impose strict liability crime when statute is silent, including severity of punishment, seriousness of harm to public, defendant's opportunity to ascertain true facts, difficulty of prosecution, and number of prosecutions expected). Section 658(a)(2) is not silent in this regard—the statute explicitly contains a mental element. As discussed above, the construction rule of Amsden controls—not the Searles factors.

¶ 20. The dissent suggests that we have "ignore[d] the special context of this particular statute in favor of an inflexible reading of the Flores-Figueroa presumption." Post, ¶ 28. To the contrary, our discussion above indicates that we did consider the "special context" of § 658(a)(2) and found nothing to rebut the presumption of mens rea. As we explained, the legislative findings support only general concerns about drunk driving, and the history of amendments to the statute provides, at best, ground for speculation about the legislative intent. Furthermore, despite the dissent's protestations that the legislative history "strongly suggest[s]" the Legislature intended the age element to be strict liability, post, ¶ 37, it provides no additional support beyond what we already have discussed. The basis for the dissent's position essentially is that nothing in the legislative history indicates the Legislature intended for the scienter element to extend to the

13

age element. But our goal is not to prove the Legislature intended such a result, but to look for evidence that rebuts the presumption against strict liability. And the contrary intent must be "expressly provided." Stanislaw, 153 Vt. at 523, 573 A.2d at 290. Because the dissent cites no specific legislative findings to indicate a concern about underage drinking, the bulk of its analysis focuses on the House's proposed amendments and the conference committee's recommendations in response to the amendments. Post, ¶¶ 31-35. As we discussed above, any intent derived from these actions is mere speculation, and such speculation is very shaky ground on which to rest the interpretation of the scienter element of a criminal statute.

¶ 21. We hold that the term "knowingly" modifies the age element of § 658(a)(2) and that therefore the trial court erred in instructing the jury that the State was not required to prove defendant's knowledge that the person he enabled to consume an alcoholic beverage was a minor. The final issue we must resolve is whether the trial court's jury instruction error was harmless. As we explain below, we hold that it was not.

¶ 22. Our decision in State v. Jackowski, 2006 VT 119, 181 Vt. 73, 915 A.2d 767, informs our discussion here on harmless error. The harmless error standard we articulated in Jackowski requires "a belief that the error was harmless beyond a reasonable doubt." Id. ¶ 8. There, we considered an erroneous jury instruction and its impact on the final decision. We discussed our longstanding precedent holding that an error is not harmless when an element of a crime is removed from a jury's consideration and the State is improperly relieved of its burden to prove each element of the crime beyond a reasonable doubt. Id.

¶ 23. We acknowledge that there may be times that the court's failure to instruct the jury on the intent element of a crime is harmless. We recognized one such circumstance in State

14

v. Trombley, 174 Vt. 459, 807 A.2d 400 (2002). There, the court failed to instruct the jury on the issue of intent. We nonetheless concluded that, because the defendant did not contest the intent at trial, the error was harmless beyond a reasonable doubt. Id. at 462-63, 807 A.2d at 405. As in Trombley, the State here contends that the knowledge element was not at issue, arguing that the evidence establishes "beyond a reasonable doubt" that defendant knew the minor's age. In support of this, the State cites to unrebutted testimony that defendant referred to him as "this kid" and that defendant's friend told defendant he did not want to buy alcohol "for a minor." While this circumstantial evidence was available to the jury to find the requisite knowledge, we cannot say beyond a reasonable doubt that the jury would find defendant had knowledge. Unlike in Trombley, defendant here never expressly admitted that he knew the minor's age. It is not our role as an appellate panel to weigh the credibility of the evidence, see Chase v. Bowen, 2008 VT 12, ¶ 15, 183 Vt. 187, 945 A.2d 901, and, because the jury, as factfinder, was not required to weigh the evidence of defendant's knowledge of the minor's age, the error was not harmless.

Reversed and remanded for a new trial consistent with this decision.

FOR THE COURT:

Associate Justice

¶ 24. **EATON, J, dissenting.** I cannot join the majority's interpretation of 7 V.S.A. § 658(a)(2), which elevates a rule of statutory construction over legislative intent. The majority initially states that a "plain reading" of § 658(a)(2) precludes prosecution of the offense unless the defendant knew that the enabled person was a minor, ante, ¶ 6, but ultimately acknowledges

15

the ambiguous statutory language and relies exclusively on a rule of statutory construction while ignoring more critical factors indicative of a contrary legislative intent. A closer examination of the nature and purpose of the statute and its legislative history reveals that the Legislature never intended to require, as an element of § 658(a)(2), that a defendant know the age of the person enabled in the consumption of alcohol. Accordingly, I respectfully dissent.

¶ 25. Our fundamental judicial role in construing legislative enactments is to ascertain and give effect to the intent of the Legislature. In re C.S., 158 Vt. 339, 343, 609 A.2d 641, 643 (1992) ("The bedrock rule of statutory construction is to determine and give effect to the intent of the Legislature."). We have repeatedly stated that rules of statutory construction, even the plain meaning rule, are "no more than an aid in our efforts to determine [the] legislative intent" that "constitutes the law." Hill v. Conway, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983); see State v. Baldwin, 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981) (stating that "rules of statutory construction are no more than aids, meaningless in themselves, developed through long years of experience for the sole purpose of assisting the interpreter in achieving [the] goal" of construing legislative intent); cf. State v. Fuller, 163 Vt. 523, 527, 660 A.2d 302, 305 (1995) (stating that in pari materia is statutory rule of construction "to be relied upon where appropriate . . . but not where it leads to a result not consistent with legislative intent" (citations omitted)). "Rules of construction are not laws, hard and inflexible, which must be applied in a given situation simply because it is possible to do so." Baldwin, 140 Vt. at 511, 438 A.2d at 1140 (emphasis added). Yet, that is precisely what the majority appears to have done.

¶ 26. The rule of construction governing the majority's holding is described as follows in the principal case upon which the majority relies: "courts ordinarily read a phrase in a criminal

16

statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." Flores-Figueroa v. United States, 556 U.S. 646, 652 (2009).[7] In Flores-Figueroa, the Supreme Court considered an aggravated identity theft statute that punishes a person who, while committing other enumerated crimes, "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 18 U.S.C. § 1028A(a)(7). The court reasoned that it seemed "natural" as "a matter of ordinary English grammar . . . to read the statute's word 'knowingly' as applying to all the subsequently listed

---

[7] The majority also cites § 2.02(4) of the American Law Institute's Model Penal Code, which provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provisions shall apply to all the material elements of the offense, unless a contrary purpose plainly appears." This provision is part of a section that stands for the more general principle that "a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." Model Penal Code § 2.02(1). The section would essentially eliminate all strict liability criminal offenses except for those imposing only fines. See id., comment 1, at 229 ("This section expresses the Code's basic requirement that unless some element of mental culpability is proved with respect to each material element of the offense [except for offenses for which only fines may be imposed], no valid criminal conviction may be obtained."). It has not been adopted in Vermont, however, and, in fact, it is inconsistent with the very statute we are construing. See State v. Kerr, 143 Vt. 597, 605, 470 A.2d 670, 674 (1983) (refusing to read scienter element into statute that criminalizes possession of firearm during commission of felony and noting other "statutory crimes in which scienter is not required for conviction, for example, the unlawful furnishing of alcoholic beverages under 7 V.S.A. § 658, so-called statutory rape, certain motor vehicle offenses, and others" (citation omitted)); see also Model Penal Code § 2.02(4), comment 6, at 245 n. 45 (noting that Vermont has not explicitly dealt "with the issue of the application of the mental element required by the substantive offense to all of the material elements thereof"). Indeed, as the majority acknowledges, in a recent decision we declined to apply individual sections of the Model Penal Code to our homicide statute. State v. Congress, 2014 VT 129, ¶ 39 n.5, ___ Vt. ___, 114 A.3d 1128.

elements of the crime," including that the identification belonged to a real rather than nonexistent person. Flores-Figueroa, 556 U.S. at 650.[8]

¶ 27. "Nevertheless, the Court did not purport to establish a bright-line rule that a specified mens rea always applies to every element of the offense." United States v. Washington, 743 F.3d 938, 942 (4th Cir. 2014). Rather, "it approvingly cited Justice Alito's concurrence for the proposition that 'the inquiry into a sentence's meaning is a contextual one.' " Id. (quoting Flores-Figueroa, 556 U.S. at 652; see Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 131 (2d Cir. 2009) (same)). Expressing his "concern[] that the Court's opinion may be read by some as adopting an overly rigid rule of statutory construction," Justice Alito "join[ed] the opinion of the Court except insofar as it may be read to adopt an inflexible rule of construction that can rarely be overcome by contextual features pointing to a contrary reading."

---

[8] The majority's statement that this Court has "adopted" the rule of construction applied by the majority in Flores-Figueroa is an overstatement. See ante, ¶ 11. To be sure, in State v. Amsden, we cited Flores-Figueroa in support of our conclusion that the adverb "willfully" in our cruelty-to-a-child statute, 13 V.S.A. § 1304, modified not only the verbs in the statute, including "neglects" and "exposes," but also the adverbial phrase following those verbs—"such child . . . in a manner . . . to endanger his or her health." 2013 VT 51, ¶ 33, 194 Vt. 128, 75 A.3d 612. In that case, however, there was no special context to assume otherwise, and it made little sense to have willfully modify the verb "exposes" without it also modifying the adverbial phrase explaining what the child was being exposed to—danger.

Maine, for example, has statutorily adopted this rule of construction and, to a large extent, the Model Penal Code principles noted in footnote 7. See Me. Rev. Stat. Ann. 17-A, § 34(1)-(2) (stating that, except as specifically provided, "[a] person is not guilty of a crime unless that person acted intentionally, knowingly, recklessly or negligently, as the law defining the crime specifies, with respect to each other element of the crime," and "[w]hen the definition of a crime specifies the state of mind sufficient for the commission of that crime, but without distinguishing among the elements thereof, the specified state of mind applies to all the other elements of the crime"). Vermont has not done so, however, and we should not apply the rule of construction as if we have.

Flores-Figueroa, 556 U.S. at 659, 661 (Alito, J., concurring).[9]  In the majority opinion, the Court too recognized that some statutes "typically involve special contexts or themselves provide a more detailed explanation of background circumstances" that would call for a different result, but found "[n]o special context" in the case before it.  Id. at 652; cf. Washington, 743 F.3d at 942-43 (declining to apply Flores-Figueroa presumption to criminal statute prohibiting persons from knowingly transporting minors in interstate transportation); United States v. Tavares, 705 F.3d 4, 19-20 (1st Cir. 2013) (same); United States v. Daniels, 653 F.3d 399, 409-10 (6th Cir. 2011) (same).

¶ 28.    Justice Alito's concerns have been realized in this case.  The majority ignores the special context of this particular statute in favor of an inflexible reading of the Flores-Figueroa presumption.  The majority acknowledges that the presumption is limited and can be negated by legislative history, but then makes only a brief examination of the statute and its history before finding no logic or rationale in support of a conclusion that the Legislature did not intend to extend the "knowingly" scienter element in § 658(a)(2) to the age of the person enabled.  For the reasons discussed below, I believe that the nature and purpose of the statute, as well as its legislative history, support such a conclusion and overcome the Flores-Figueroa presumption.

¶ 29.    The law prohibiting persons from selling or furnishing alcohol to minors has been on the books, virtually unchanged, since 1949.  See 1949, No. 144, § 2.  As the majority

---

[9]  Justice Scalia also wrote a concurring opinion, joined by Justice Thomas, which agreed with the Court that, in that particular case, once "knowingly" was understood to modify the object of the verbs in the sentence, "there [was] no reason to believe that it [did] not extend to the [prepositional] phrase which limits that object."  Flores-Figueroa, 556 U.S. at 657.  Justices Scalia and Thomas declined to join, however, the notion that the statutory rule of construction applied by the majority was "a normative description of what courts should ordinarily do when interpreting [criminal] statutes."  Id. at 658.

acknowledges, we have always considered that provision, now set forth in § 658(a)(1), to make the offender strictly liable irrespective of whether the offender knew that the person furnished or sold the alcohol was a minor. See Kerr, 143 Vt. at 605, 470 A.2d at 674 (citing § 658 as example "of statutory crimes in which scienter is not required for conviction").

¶ 30. The provision at issue in this appeal regarding enabling minors to consume alcohol, § 658(a)(2), was added to the statute in 1998. 1997, No. 117 (Adj. Sess.), § 5. Because there is some doubt as to the extent of the scienter element contained in the provision, we examine, in addition to "the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." Perry v. Med. Practice Bd., 169 Vt. 399, 406, 737 A.2d 900, 905 (1999); see Dep't of Corrections v. Human Rights Comm'n, 2006 VT 134, ¶ 7, 181 Vt. 225, 917 A.2d 451 (stating that "we effectuate legislative intent by looking to the statute's language and any legislative history, as well as legislative policy the statute was designed to implement") (citations omitted).

¶ 31. Section 658(a)(2) was added to the statute as part of a comprehensive law designed to combat drunk driving in Vermont, with a particular emphasis on preventing drunk driving by youths. The lengthy and detailed legislative findings in support of the law identify, among other things, both the deficiencies in the then-current DUI enforcement program, 1997, No. 117 (Adj. Sess.), § 1, (12), and the components that should be part of a comprehensive and effective DUI prevention and enforcement program, id. § 1, (17). Among the six notable deficiencies in the then-current enforcement program, the Legislature found that: (1) "[a] disproportionate number of DUI offenders are young persons"; and (2) "[t]here are insufficient criminal and civil consequences for persons (youths and adults) secondarily responsible for

20

DUI." Id. §§ 1, 12 (C), (E) (emphasis added). Moreover, among the components of the new enforcement program identified in the legislative findings in support of Act 117, the Legislature cited "revised and enhanced criminal and civil penalties for persons who enable and who are secondarily responsible for DUI." id. § 1, (17)(D) (emphasis added). These particular deficiencies in the old program and improvements brought by Act 117 were addressed, at least in part, in the revision of § 658.

¶ 32. With that in mind, we examine the legislative history of Act 117. The initial Senate bill did not amend § 658, which, as noted, criminalized the selling or furnishing of alcohol to a minor without regard to whether the offender knew the age of the recipient. The House proposed amending the bill to have § 658(a) read as follows:

> (a) A person, licensee or otherwise, shall not:
>
> (1) sell, furnish or knowingly enable, facilitate, assist or permit the sale or furnishing of malt or vinous beverages or spirituous liquors to a person under the age of 21; or
>
> (2) knowingly enable, facilitate, assist or permit the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.

S. 185, 1997-1998 Legislative Session, House Proposal of Amendment, available at http://www.leg.state.vt.us/docs/1998/bills/house/S-185.HTM (emphasis added).

¶ 33. Most notable about the proposed House amendment is that a scienter element was inserted for certain actions—including enabling the sale, furnishing, or consumption of alcohol—but the selling or furnishing of alcohol continued to have no scienter element. This is notable in two respects. First, it demonstrates that the House intended to restrict the scienter element to certain actions, including enabling, but not to the age of the recipient. This is clear because the phrase "to a person under the age of 21" at the end of the proposed § 658(a)(1) is the

21

object of all of the verbs in the sentence, including "sell" and "furnish," both of which precede and are not modified by the word "knowingly." The majority rejects this notion, but even defendant, in his advocacy role, does not dispute the State's position that the new "knowingly" scienter element in the House version did not extend to the prepositional phrase at the end of the sentence, which referred back to all of the verbs, including "sell" and "furnish." Rather, defendant surmises that a later conference committee amendment was aimed at extending the new scienter element, not only to the enabling action, but also to the age of the person enabled. Second, restricting the new scienter element to the enabling action makes perfect sense. A person cannot sell or furnish alcohol to someone without knowing that he or she is doing it, but one can enable the consumption of alcohol by another without knowing it. Plainly, the House wanted to make sure that a person cannot be found liable for unknowingly enabling the consumption of alcohol—for example, by having alcohol in the house that is accessed when the adults are away.

¶ 34. As noted, a conference committee was formed to address various disagreements concerning Act 117. Based on the recommendation of that committee, § 658 was amended to include its current language:

> (a) A person, licensee or otherwise, shall not:
>
> (1) sell or furnish malt or vinous beverages or spirituous liquors to a person under the age of 21; or
>
> (2) knowingly enable the consumption of malt or vinous beverages or spirituous liquors by a person under the age of 21.

¶ 35. Legislative counsel's summary of Act 117, as passed, states, in relevant part, that the law amended the offense of the sale of alcohol to minors by "knowingly enabling consumption" and increasing the penalties. Legislative Counsel, Summaries of Acts and

Resolves, Act 117 (S. 185), available at http://www.leg.state.vt.us/docs/1998/acts/act 117SUM.HTM. There is no indication in the summary that the word "knowingly" in § 658(a)(2) applied not only to the act of enabling but also to the age of the recipient. See State v. Kenvin, 2011 VT 123, ¶ 25 n.3, 191 Vt. 30, 38 A.3d 26 (stating that summaries of passed bills by legislative counsel "are routinely consulted and cited by courts as evidence of legislative intent"). And, in fact, the majority's decision imposing such a construction of § 658(a)(2) is inconsistent with the legislative findings, noted above, indicating the Legislature's intent via Act 117 to address the scourge of drunk driving, particularly by youths, by "revis[ing] and enhance[ing] the criminal and civil consequences for persons who enable and who are secondarily responsible for a DUI." 1997, No. 117 (Adj. Sess.), § 1, 17(D).

¶ 36. The question arises then—what was the purpose underlying the committee's changes to the House's amended version of § 658? It appears that the committee's changes were limited to clarifying and streamlining the House version. The committee removed the redundant verbs "facilitate, assist, and permit the sale or furnishing of" while retaining the verb "enable" with the preceding scienter element, "knowingly." Instead of having two separate sections repeating the verb "enable" for both sale and consumption, the committee placed "enable" in one subsection aligned with the more general term "consumption." There is no indication that the committee intended to make a significant change to the House amendment—and to the long history of the statute as a strict liability offense with respect to the age of the recipient—by extending the scienter element beyond the verb "enable" to the age of the recipient. Indeed, it is difficult to fathom a purpose for doing so, and, as noted, the summary prepared by legislative

23

counsel makes no mention of extending the scienter to the age of the recipient, stating only that the new law includes "knowingly enabling consumption."

¶ 37. In short, the purpose and legislative history of § 658(a)(2) strongly suggest that the Legislature did not intend to extend the scienter element modifying the verb "enable" to require that the enabler know the age of the person enabled. Such a construction of the statute undercuts the policies behind the law and is not supported by the legislative history. These factors should control over a rule of construction concerning the norms of English grammar. See State v. Lynch, 137 Vt. 607, 613, 409 A.2d 1001, 1005 (1979) ("[L]egislatures are not grammar schools; and, in this country at least, it is hardly reasonable to expect legislative acts to be drawn with strict grammatical or logical accuracy." (quotation omitted)).

¶ 38. Moreover, the majority's construction rewards ignorance. For example, the parents who host their college-aged child's party may avoid all liability for enabling consumption of alcohol by minors simply by not furnishing the alcohol and not determining the age of the party attendees. "Ignorance is bliss" cannot have been what the Legislature intended. It makes no sense to hold a seller or furnisher strictly liable for allowing alcohol to get into the hands of minors but to require one who enables consumption by a minor to have knowledge of the age of the consumer. The acts undertaken by the seller/furnisher and the enabler have the same result, alcohol in the hands of a minor, and the same risk of injury or death, as this case so heartbreakingly demonstrates. If the Legislature intended to criminalize the sale or furnishing of alcohol to a minor despite the seller or furnisher's lack of knowledge of the age of the minor, as they have done, I see no reason why they would draw a distinction to require such knowledge for enabling the consumption.

¶ 39. "This Court will not imply a mental requirement . . . when the statutory language cuts against such a result and the policy behind the statute would be defeated." State v. Searles, 159 Vt. 525, 527, 621 A.2d 1281, 1283 (1993) (quotation omitted). In determining whether the Legislature intended a statute to impose strict liability, we have examined, in addition to the statutory language, the following factors: "The severity of the punishment; the seriousness of the harm to the public; the defendant's opportunity to ascertain the true facts; the difficulty of prosecution if intent is required; and the number of prosecutions expected." State v. Roy, 151 Vt. 17, 25, 557 A.2d 884, 889-90 (1989). All of these factors favor imposing strict liability in the instant case with respect to the age of the victim. The punishment is not particularly severe, and yet the potential harm to the public is great. The person knowingly enabling consumption can easily ascertain the age of the enabled person, and yet, as is evident from this case, proving that the enabler knew the recipient's age can be problematic.

¶ 40. The majority declines to consider these factors, noting that § 658(a)(2) is not silent as to mens rea but rather contains a scienter element. That may be so with respect to the prohibited action of enabling the consumption of alcohol, but the question posed in this case is whether the scienter element contained in the statute extends beyond the enabling action to the age of the person enabled. Thus, the same factors are in play, and they all—along with the statute's purpose and legislative history—cut against the majority's holding. For the above reasons, I respectfully dissent.

¶ 41. I am authorized to state that Chief Justice Reiber joins this dissent.

_____
Associate Justice

25